ALBION P. VEAZIE and another *vs.* HENRY PARKER and another.

Penobscot.    Opinion July 22, 1881.

*Broker — duties of; compensation of.*

A broker is entitled to compensation when he has found for his employer one who makes a written contract for the purchase or sale of the property to be bought or sold.

It is no part of the broker's duty to direct or advise as to the terms of the contract between the parties, or explain the meaning of the words used by them.

Conversations between buyer and seller before and after the making of the contract, are not admissible to affect the broker's right to compensation.

ON EXCEPTIONS.

Assumpsit to recover compensation as a broker, for selling or obtaining a purchaser, who entered into the following written contract with the defendants, for the purchase of a quantity of ice.

(Contract.)

"Bangor, April 19th, 1880.    The Brewer Sweet's Pond Ice Company, and the Sweet's Fresh Pond Ice Company, have this day sold to F. H. Clergue, the ice in their houses at Sweet's Pond, in South Orrington, on the following conditions :

"Said Clergue shall pay for said ice at the rate one dollar and twenty-five cents per ton, cash, measured forty-five cubic feet to the ton ; said Clergue shall have the right to occupy said houses and the land thereunder, until January 1, 1881 ; the title to said ice shall not vest in said Clergue until fully paid for.    Said companies represent said ice to be good, merchantable ice, none less than eighteen inches thick, and they agree to put it in good condition for preservation, by double boarding all around, and filling with sawdust or other suitable material.    Said Clergue shall use so much of the hay, etc. for packing on board as may be necessary."

Duly signed.

The writ was dated June 23, 1880 ; plea, general issue.

*Barker, Vose and Barker*, for the plaintiffs, cited : 8 Moak. 452; *Cooke* v. *Fiske*, 12 Gray, 493; *Love* v. *Miller*, 21 Am. R. 192 ; S. C. 53 Ind. 294.

*Laughton and Clergue*, for the defendants.

Parker was ignorant of what was necessary to constitute "merchantable" ice. Veazie assured him that the contract was all right and he could safely sign it. The ice was not merchantable, and the contract failed.

A broker is required to employ in his principal's service, the diligence and skill which good business men are accustomed to apply under similar circumstances. If the principal derives no benefit from the broker's services by reason of the latter's unskillfulness, negligence or unfaithfulness, the latter is not entitled to compensation. 1 Pars. Contr. 99 ; 2 Chitty, Contr. 803, 804; Story, Agency, 331 ; Whar. Agency & Agents, 325, 726 ; 12 Pick. 328.

This negligence and unskillfulness the defendants should have been permitted to prove. *McClane* v. *Maynard*, 35 How. 313.

Plaintiffs did not find a purchaser for the ice which the defendants had to sell, and there was no valid contract, because the ice sold was not of the quality required by the contract, and therefore plaintiffs cannot recover. Benjamin Sales, § 50 ; Edwards, Factors and Brokers, 113.

A broker who brings parties together where one wants to buy a particular article and the other wants to sell that particular article, and a contract of sale is then made, may be entitled to his commission. But that was not done here. Clergue did not want to buy the ice which Parker had to sell, and the contract was void, and the broker did not earn his commission.

APPLETON, C. J. The plaintiffs are brokers and bring this action to recover compensation for their services as such.

The defendants having ice to sell, employed them to find a purchaser. They found one wishing to purchase and introduced the parties to each other. A bargain was made. Its terms were in writing. It was binding on the parties. So far as relates to compensation, a binding agreement to sell is a sale within the contemplation of the parties. *Rice* v. *Mayo*, 107 Mass. 550.

Whether the contract is verbal or written, the bringing the parties together entitles the broker to his compensation. *Barnard* v. *Monnot*, 40 N. Y. 203; *Higgins* v. *Moore*, 34 N. Y. 417. It is no answer to the broker's claim, after he has found his employer a vendor, who makes a written contract for the sale of the property, that he could not make a perfect title, and therefore was unable to carry out his contract. *Knapp* v. *Wallace*, 41 N. Y. 477. Nor does a refusal to perform, constitute a defence. *Love* v. *Miller*, 53 Ind. 294; *Cooke* v. *Fiske*, 12 Gray, 491. So, though a principal who has been brought by the broker into communication with the party with whom he is dealing, revokes his authority, and takes the negotiation in his own hands. *Stillman* v. *Mitchell*, 2 Robertson, 523; *Green* v. *Ballard*, 108 E. C. L. 681. The contract is that of the parties. The brokers are not parties to it. Their right to compensation attaches on its completion. It matters not whether it was absolute or conditional; whether modified, changed or rescinded by the parties.

2. "The defendants proposed to show by a witness, that the contract was not completed according to the conditions, by reason of the unskilled and negligent performance by the plaintiffs of their duties in directing and advising the drawing of the contract." The contract was drawn by the purchaser. The plaintiffs had no duties to perform in directing or advising the contract. It was not for them to advise, still less to direct.

The burden of the complaint is that the word "merchantable," was used in reference to the ice. But it will hardly be contended that "unmerchantable" was the word to be used; or if there was any peculiar, unusual and recondite meaning to be attached to it, that the brokers were bound to have better knowledge of such meaning when applied to ice, than when referring to any other subject matter of traffic or than the parties themselves.

3. The conversation between the buyer and purchaser, prior to their making the contract or subsequently thereto, are matters with which the plaintiffs have nothing to do, and in no way affect their right to compensation.

4. The testimony of Bracket to show the meaning of "merchantable" in the ice trade, is immaterial so far as relates to the

contract. The terms of the contract were those of the parties, and cannot but have expressed their intentions. If the ice was not of the quality required, the 'purchaser's remedy was on the contract.

5. The question as to whether the ice was or was not merchantable was a matter between the parties. The question before the jury was not as to the rule or amount of compensation, but whether any thing was due. The amount of ice as measured in April, was twenty-seven hundred and one tons. The ice was shipped in August after being hauled a mile and a quarter or two miles to the place of shipment. The defendant Parker says it then weighed out seventeen hundred tons. The verdict was rendered for commissions on this sum at the price agreed upon. When it is borne in mind how long the ice remained, after its first admeasurement and how great the necessary and inevitable loss by removal under an August sun would be, it would seem that if any complaint were to be made as to the verdict, it should come from the plaintiffs rather than the defendants. Indeed, the defendant Parker testifies he never denied his liability, nor, indeed, does there seem to be any reason why he should.

*Motion and exceptions overruled.*

BARROWS, VIRGIN, PETERS, LIBBEY and SYMONDS, JJ., concurred.