HAROLD A. LABBE
*vs.*
GERALD A. CYR
AND
KATHERINE L. CYR

Kennebec.    Opinion, December 20, 1954.

*Jerome G. Daviau,* for plaintiff.
*Burton G. Shiro,* for defendant.

SITTING: WILLIAMSON, TIRRELL, WEBBER, BELIVEAU, TAPLEY, JJ., THAXTER, A.R.J. FELLOWS, C.J., did not sit.

WEBBER, J. This was an action of assumpsit to recover a real estate broker's commission. Verdict was for the plaintiff. Exceptions are raised to certain rulings of the presiding justice.

After verdict, defendant presented a motion to the presiding justice for a new trial on the usual grounds. The written motion itself shows nothing on its face to indicate whether it was addressed to this court or to the presiding justice, but the docket entries indicate that the motion was laid before the presiding justice and that he denied it. Apart from this source of information, it would be impossible for this court to determine from the record whether the motion was intended for the presiding justice or for the Law Court. We take this opportunity to emphasize once again the importance of formally addressing motions for new trial either to the "Justice Presiding" or to the "Supreme Judicial Court sitting as a Court of Law," as is permitted by Rule XVII of the Revised Rules of the Supreme Judicial and Superior Courts (147 Me. 464). We urged the desirability of formal address to the court whose action is sought in *Carroll* v. *Carroll,* 144 Me. 171.

Plaintiff contends that defendant, having made his motion for new trial to the presiding justice, thereby waived his right to exceptions to any rulings of the court during trial. In support of this position he relies upon *Cole* v. *Bruce,* 32 Me. 512 and *Ellis* v. *Warren,* 35 Me. 125. These cases were decided in 1851 and 1852 respectively. In 1822 a Court of Common Pleas was established. P. L., 1822, Chap. CXCIII, the creating statute, provided in Sec. 5 thereof for the taking of exceptions to "any opinion, direction, or judgment of said Court of Common Pleas," and contained the following: "And thereupon all further proceedings, in such

action in said court, shall be stayed." By P. L., 1839, Chap. 373, the Court of Common Pleas was abolished and District Courts were created as a substitute. The same phrase as to stay of proceedings after exceptions taken was carried over and incorporated in the law. R. S., 1840, Chap. 97, Sec. 18 contained substantially the same phrase as applicable to proceedings in District Courts. It was this statutory phrase which governed the decision in both of the cited cases. In *Cole* v. *Bruce, supra,* the case arose in the District Court. In holding that exceptions were waived by a motion for new trial addressed to the presiding justice, the court quoted from R. S., 1840, Chap. 97, Sec. 18 the phrase applicable to stay of further proceedings. It is clear that the court treated the motion as a "further proceeding" which was not open to the moving party unless he had first waived his exceptions. *Ellis* v. *Warren, supra,* likewise up from the District Court, hinged upon the same statute. However, P. L., 1852, Chap. 246, abolished District Courts and transferred their jurisdiction to the Supreme Judicial Court at *nisi prius.* Significantly, the phrase applicable to stay of proceedings disappeared from statutory law at that time, never since to return. Moreover, the provision had never been applicable to proceedings in the Supreme Judicial Court. R. S., 1840, Chap. 96, Sec. 17 provided for the taking of exceptions in that court and no such phrase appears.

The reasoning which underlay the decisions in these two cases is not to be confused with the reasoning employed in *State* v. *Simpson,* 113 Me. 27. In that case, involving a misdemeanor, exceptions were taken to a refusal to direct a verdict for respondent. These were deemed waived by a motion for new trial addressed to the presiding justice on the ground that exceptions and motion raised the *same question,* and as between the Law Court and the presiding justice, the respondent had elected his tribunal and was bound by the result. By dictum the court mentioned the rule in *Cole* v. *Bruce, supra,* as "well settled," but there is no sug-

gestion that the historical reason for the rule was examined and we do not feel ourselves bound by that dictum.

The rule of *Cole* v. *Bruce, supra,* was reaffirmed in an analogous situation in *State* v. *Power,* 123 Me. 223. The court made no analysis of the underlying reasons for the rule and, insofar as the *Power* case applies to the waiver of *all exceptions to rulings* by the filing of a motion for new trial addressed to the presiding justice, it is overruled.

Whenever the issue has been raised as to whether exceptions to a refusal to direct a verdict were waived by a motion to the presiding justice for a new trial, conflicting reasons have been advanced for the result reached. Sometimes the court has placed emphasis on the *finality* of the decision of the tribunal selected. Sometimes emphasis has been placed on the *identical nature* of the question submitted by exceptions and by motion. This difference in emphasis is manifest in *State* v. *Bobb,* 138 Me. 242, which involved a felony. In this case the court placed the emphasis on the *finality* of decision of the tribunal chosen, and determined that where, by virtue of the appeal permitted in felony cases, the decision of the presiding justice on motion is *not* final, the exceptions should not be deemed waived. With reference to the two methods of bringing the same issue to the attention of the appellate tribunal, (1) by exceptions to refusal to direct verdict, and (2) by motion to presiding justice for new trial and appeal, the court said: "Both are not necessary. It should not follow, however, that if there be error in perfecting the second method, it is fatal to the first." Obviously, if the court had considered itself bound by the broad rule in *Cole* v. *Bruce, supra,* it would have been compelled to decide that the mere making of the motion to the presiding justice waived any and all pending exceptions. The court mentioned the *Cole* case and the *Ellis* case in passing and called attention to the fact that the *Ellis* case was decided in 1852, since which

time appeals in felony cases had been first permitted. The court overlooked the more compelling reason for disregarding these cases, which is that the statutory change in 1852 effectively terminated their applicability. If there is validity in the concept that there is no waiver where the decision of the presiding justice is not final, as in felonies, the same reasoning might well be applied in civil cases where, by statute, one may now address a motion for new trial to the Law Court after such a motion has been denied by the presiding justice. R. S., 1944, Chap. 100, Sec. 60. Mr. Justice Hudson, dissenting in *State v. Bobb, supra,* as to procedural matters, emphasized that the reason for waiver which had always been relied upon in previous cases had been the *identity of the question* submitted by the two procedural methods. In his view, the adoption of the second method waived the first whether or not the result of the second procedure was final or appealable. Even if this reasoning were followed, however, it would be proper to note that exceptions to the rulings of a presiding justice upon the admission of evidence and instructions to the jury do not present *the same question* which is raised by a motion for a new trial. The problem has been perhaps further complicated by the suggestion in *Mills v. Richardson,* 126 Me. 244, that in civil cases a motion for new trial does not exactly overlap exceptions to a refusal to direct a verdict where an added issue of excessive damages is presented by the motion. But see *Symonds v. Free Street Corp.,* 135 Me. 501, in which the identity of issues was assumed.

For the purposes of this case, however, it seems only necessary to say, and we so hold, that exceptions to rulings of the presiding justice during trial pertaining to the admission of evidence and instructions to the jury are not waived by a motion for a new trial subsequently addressed to the presiding justice. There has been no sound or valid reason for a contrary view since 1852. In this connection we can see no distinction between civil and criminal cases. There

are numerous instances in which our court has considered exceptions to such rulings after motion for new trial addressed to the presiding justice. *State* v. *Friel,* 107 Me. 536; *State* v. *Albanes,* 109 Me. 199; *State* v. *Howard,* 117 Me. 69; *State* v. *Sanborn,* 120 Me. 170; *State* v. *Dodge,* 124 Me. 243; *State* v. *Carter,* 121 Me. 116; *State* v. *Morin,* 131 Me. 349; *State* v. *Dorathy,* 132 Me. 291.

The evidence discloses that defendant entered into an ordinary arrangement with plaintiff real estate broker for the sale of defendant's house. Under this contract plaintiff could earn a commission by finding a purchaser as no special conditions were attached requiring the broker actually to complete or consummate a sale. Plaintiff found a purchaser ready, able and willing to purchase on terms agreed upon by the seller as evidenced by an option in writing executed by the seller. A substantial deposit was paid by the purchaser to bind the bargain. Thereafter the seller, for personal reasons and without legal excuse, delayed for several months to execute a deed and complete the transaction. The purchaser finally wearied of unexplained delay, demanded and received return of her deposit, and abandoned the transaction. The jury very properly found for the plaintiff.

In cases involving claims for commissions by real estate brokers, the first consideration must be as to the nature of the contract between seller and broker. A familiar and ordinary type of arrangement contemplates that the broker will find a purchaser ready, able and willing to buy the property on the exact terms authorized or agreed to by the seller. Such a contract may result even where the parties make use of such words as "sale" or "to sell" or "to make a sale." *Paradis* v. *Thornton,* 141 Me. 23. Although in such a case the parties obviously have in mind a transaction of purchase and sale as an ultimate objective, the completion or consummation of a sale is not a condition precedent to the earning of a commission. *Jutras* v. *Boisvert,* 121 Me. 32. "To entitle

a broker to a commission when no sale is actually consummated, a broker employed to find a purchaser must either produce to the owner a customer who is able, ready, and willing to buy on the terms prescribed by the owner, or else take from the customer a binding contract of purchase, unless those requirements are waived by the principal's refusing to proceed after notice by the broker that he has such a contract or purchaser." *Damers* v. *Fisheries Co.,* 119 Me. 343 at 350. The duty of a broker to find a purchaser "is discharged by producing a customer ready and willing to meet the exact terms of sale proposed by his employer. If, however, he produces a customer who enters into a *mutually enforceable* contract with the owner for the purchase and sale of the real estate in question, upon terms satisfactory to the owner, the broker is entitled to his commission whether or not the customer actually carries out his contract. The principal is deemed to have accepted the contract in lieu of exact performance of the broker's contract." *MacNeill Real Estate* v. *Rines, et al.,* 144 Me. 27 at 31; *Veazie* v. *Parker,* 72 Me. 443. Cases arise, however, where the contract between seller and broker clearly contemplates that a sale must be completed or consummated as preliminary to the earning of a commission. "A broker employed to sell, as distinguished from a broker employed to find a purchaser, is not entitled to compensation until he effects a sale, or procures from his customer a binding contract of sale." *Damers* v. *Fisheries Co., supra,* at page 350. Where the *only* performance by the broker is the procuring from his seller of a written contract or option not binding upon the purchaser, the commission is not earned unless the purchase be consummated *or consummation be prevented by the seller. MacNeill Real Estate* v. *Rines, et al., supra; Hanscom* v. *Blanchard,* 117 Me. 501. (Emphasis supplied.)

These well accepted propositions of law were all fully and adequately covered by the instructions given by the presiding justice to the jury, and no exception was taken to the in-

structions given. At the close of the charge, however, defendant presented twenty requested instructions. Two of these were given and the others refused. Exceptions were noted to the refusal. "A party is not entitled to have a requested instruction given, even if it states the law correctly, unless it appears that it is supported by facts, that it is not misleading, that it is not already covered by the charge, and that the refusal to give would be prejudicial." *Desmond, pro ami* v. *Wilson,* 143 Me. 262 at 268. All the instructions refused fell within one or more of the above categories and were properly rejected. For example, several of the requested instructions related to the obligation of good faith and loyalty owed by the broker to his principal. These statements of law, although perhaps academically correct, had no applicability in view of the fact that the record discloses not even a scintilla of evidence of any failure of the broker in this respect. Such instructions, if given, would only have tended to confuse the jury by suggesting to their minds that such issues had in fact been raised by the evidence. It seems unnecessary to discuss all of the requested instructions in detail.

During the trial defendant noted exceptions to various rulings of the presiding justice upon the admission of evidence. In some instances evidence was excluded where the question as phrased by the examiner did not, upon its face, disclose the competency or relevancy of the evidence solicited and no offer of proof was made in support of the question. In such a case neither this court nor the presiding justice could know how the exclusion might prejudice the party claiming error. The presiding justice should be fully informed before exclusion, that he may rule advisedly. *Brown* v. *McCaffrey,* et al., 143 Me. 221. The record fails to disclose any instance of prejudicial error arising out of the rulings on the admission of evidence.

The entry will be,

*Exceptions overruled.*