ANTONIO J. PALLERIA
*vs.*
FARRIN BROS. & SMITH

Knox.    Opinion, April 14, 1958.

424

*Harmon & Nichols,* for plaintiff.

*William B. Mahoney,*
*James R. Desmond,*
*Lawrence P. Mahoney,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, JJ. BELIVEAU, J., sat at argument but retired before the opinion was adopted.

DUBORD, J. This case comes up to this court on exceptions to the refusal of the presiding justice to grant a motion of the defendant, made at the close of the evidence, to direct a verdict for the defendant; and on general motion.

The plaintiff advances the contention that the motion is not properly before this court because the provisions of Rule XVII, 147 Me. 470, have not been complied with. He argues that the evidence in the case was not signed by the presiding justice, nor certified by him to the Law Court; and that the evidence was not filed within 30 days of the entry of the motion.

The pertinent sections of Rule XVII read as follows:

"Motions made to have a verdict set aside as against the law and the evidence, whether addressed to the presiding justice or to the Law Court, must be filed during the term at which the verdict was rendered but in any case never more than thirty days after the rendition of such ver-

dict, excepting only that such a motion addressed to said Law Court after denial of a like motion by the presiding justice must be filed within ten days after decision adverse to the moving party is filed by the presiding justice."

"No exceptions lie to the decision of the presiding justice and no appeal except in cases of felony."

"When such motion is addressed to the Law Court, the party making it shall cause a report of the whole evidence in the case to be prepared, signed by the presiding justice or authenticated by the certificate of the official court stenographer, and filed within such time as the presiding justice shall by special order direct, and, if no such order is made, it must be done within thirty days after the adjournment of the term at which the verdict was rendered or within thirty days after the filing of the motion, whichever is later; if not so done, the motion may be regarded as withdrawn, and the clerk, at a subsequent term, may be directed to enter judgment on the verdict."

The record indicates that at the close of the evidence, the defendant addressed a motion to the presiding justice praying that a verdict for the defendant be directed. This motion was denied. Exceptions were noted and at that time the presiding justice, by special order, directed that a transcript of the evidence be filed on or before April 30, 1957. The transcript was filed on April 29, 1957. A date was also fixed for the filing of an extended bill of exceptions which bill was filed within the time allowed.

Subsequent to the motion for a directed verdict, the defendant addressed a motion for a new trial pursuant to the provisions of Rule XVII, to the presiding justice. This motion was denied.

Within 10 days after decision adverse to the defendant, a motion for a new trial addressed to the Law Court was filed. This procedure is authorized by Section 60, Chapter

113, R. S., 1954, and by Rule XVII. No new order was filed by the presiding justice fixing a date for the filing of the evidence.

Plaintiff argues that by filing a motion for a new trial addressed to the presiding justice, the exceptions previously taken were waived; and as a result of this waiver all prior proceedings were in effect, effaced from the docket, and that it became necessary for the presiding justice to issue a new order specifying a date for filing the evidence. In support of his contention, plaintiff cites *Mills* v. *Richardson,* 126 Me. 244, at 249; 137 A. 689; and *Fort Fairfield* v. *Millinocket,* 136 Me. 426, at 428; 12 A. (2nd) 173. Further reference to these decisions will be subsequently made in this opinion.

It now becomes pertinent, we think, to decide whether or not in a civil case, the filing of a motion for a new trial addressed to the presiding justice, constitutes a waiver of prior exceptions, taken to the refusal to direct a verdict, in the light of § 60, Chapter 113, R. S., 1954, which authorizes the filing of a motion for a new trial addressed to the Law Court within ten days after an adverse decision on the part of the presiding justice upon the motion addressed to him.

In the very enlightening treatise of former Chief Justice Edward F. Merrill, entitled "Some Suggestions On Taking A Case To The Law Court" to be found in Volume Forty of the Reports of the Maine State Bar Association, the author had this to say; at Page 197:

> "In civil cases a general motion to the presiding justice to set aside a verdict waives exceptions to refusal to direct a verdict. See *Mills* v. *Richardson,* 126 Me. 244, 249 where the court said: 'An exception to the refusal to direct a verdict for the defendant is waived by the prosecution of a motion for a new trial before the presiding justice, or otherwise the defendant would be seeking the same remedy through two tribunals, getting the benefit of the second if he failed in the first.' The same

rule formerly applied in criminal cases, whether felonies or misdemeanors. Since the case of *State* v. *Bobb,* 138 Me., 242, felony cases are not subject to this rule. This result was based upon the ground that now by statute the decision of the single justice is not final, but an appeal therefrom lies to the Law Court. Whether the change in the statute with respect to the finality of the ruling by a single justice on a motion for a new trial in civil cases, and the allowance of a second motion therefor to the Law Court, will bring about a change in the law of waiver in such cases has not been decided. It is to be noted that in the criminal case the appeal is from the denial of the motion by the presiding justice, while in the civil case the motion to the Law Court is a new, separate and distinct motion and in no way attacks the ruling of the presiding justice. While I neither express nor intimate an opinion on the question, discretion would indicate that if one wished to preserve his exceptions to the denial of a motion for a directed verdict in a civil case, a motion should not be made to the presiding justice to set the same aside. Precaution should be further taken if one did make a motion to the presiding justice in such case and he denied the same, to make a new motion to the Law Court within the 10 days allowed therefor by statute, and not rely alone upon the exceptions to the refusal to direct a verdict, as the medium for obtaining a review by the Law Court."

The history of the decisions of this court on the question of waiver is of interest. In the case of *State* v. *Simpson,* 113 Me. 27; 92 A. 898; a respondent was under indictment for a misdemeanor. After the State had introduced all its evidence, the respondent requested the presiding justice to direct a verdict in his favor on the ground of insufficient evidence. This motion was denied and exceptions taken. After a verdict of guilty, the respondent filed a motion addressed to the presiding justice to set aside the verdict as against the law and the evidence. This motion was over-

ruled, and exceptions noted. The court said that a respondent had a right to except to the refusal of the presiding justice to direct a verdict in his favor, and upon denial of the motion, he could have taken exceptions, and in that manner take the case to the Law Court and obtain a decision and opinion as to the sufficiency of the evidence. However, the court further said, he abandoned that remedy and that course of procedure, and sought the decision and opinion of the presiding justice upon precisely the same question. It follows, the court said, that exactly the same question was presented to the determination of the presiding justice by the motion which would have been presented to the Law Court on the first exception. The court ruled that the decision of the presiding justice on the motion was final; that it was a matter within his discretion, and that exceptions did not lie to his ruling. It was pointed out that in a civil case, no appeal lies from the decision of the presiding justice to the Law Court and a defeated party cannot be heard on a motion both before the single justice and the Law Court. He must exercise his option and take one course or the other. And, having exercised his choice is bound by the result.

The court called attention to the distinction between procedure in the case of a misdemeanor and of a felony. In the latter procedure provision is made by statute for an appeal to the Law Court from the denial of a motion for a new trial by the presiding justice. Section 30, Chapter 148, R. S., 1954.

The court then went on to say:

> "This Court has frequently held both in criminal and civil cases that the prosecution of a motion for new trial before the presiding justice is a waiver of all rights of exception."

Several old decisions of this court were cited in support of this last quotation.

It will be seen from this broad statement that even exceptions taken during the progress of the trial, such as exceptions to the admission of evidence, or exceptions taken to the refusal to give requested instructions to the jury would be waived. Such is not the law now as was pointed out in the case of *Labbe* v. *Cyr*, 150 Me. 342; 111 A. (2nd) 330; and the cases cited in *State* v. *Simpson*, in support of the foregoing statement are no longer applicable by virtue of statutory changes cited in *Labbe* v. *Cyr, supra*.

The next case to be considered is that of *State* v. *Power*, 123 Me. 223; 122 A. 572. This was a search and seizure process for intoxicating liquor, a misdemeanor. The jury returned a verdict of guilty. Exceptions were entered by the respondent to a ruling admitting certain testimony, to the refusal to give requested instructions, and also to a ruling overruling a motion in arrest of judgment. The respondent then filed a motion for a new trial, which was overruled by the presiding justice.

Relying upon the decision in *State* v. *Simpson, supra,* the court ruled that the respondent had deprived himself of any claim to be heard on any exceptions arising before a hearing on the motion for a new trial.

This decision is overruled by *Labbe* v. *Cyr, supra,* at 345.

The case of *Mills* v. *Richardson*, 126 Me. 244; 137 A. 689, was decided in 1927 prior to the enactment of Section 60, Chapter 113, R. S., 1954.

Relying on the decision in *State* v. *Simpson, supra,* the court stated that an exception to the refusal to direct a verdict for the defendant is waived by the prosecution of a motion for a new trial before the presiding justice, as otherwise, the court said, the defendant would be seeking the same remedy through two tribunals, getting the benefit of the second if he failed in the first.

However, the court noted a distinction between a motion addressed to the presiding justice and one addressed to the Law Court, and had this to say:

> "An exception to the refusal to direct a verdict for the defendant is waived by the prosecution of a motion for a new trial before the presiding justice, as otherwise the defendant would be seeking the same remedy through two tribunals, getting the benefit of the second if he failed in the first. *State vs. Simpson,* 113 Me. 29. The exception is not waived by the prosecution of the general motion before the Law Court. The exception and motion are not inconsistent. They each raise the same question, whether on the evidence *a* verdict can be sustained. The general motion may also, as in this case, raise the further question whether *the* verdict can be sustained."

The next case to be considered is that of *Symonds* v. *Free Street Corporation,* 135 Me. 501; 200 A. 801. This case was decided in 1938 and like the case of *Mills* v. *Richardson, supra,* was decided prior to the enactment of § 60, Chapter 113, R. S., 1954. In this case a motion for directed verdict for the defendant was filed and denied. In a motion addressed to the Law Court by the defendant, the court said:

> "As the motion raises the same question for our consideration as does the exception, the exception is regarded as waived."

At first glance, it would appear that this decision is directly *contra* to the one of *Mills* v. *Richardson, supra,* in which it had been held that a motion addressed to the Law Court did not waive exceptions taken to a denial of a motion for a directed verdict.

Careful study of the two decisions, however, indicates no inconsistency. Undoubtedly, in *Symonds* v. *Free Street Corporation, supra,* the court meant that in view of the fact the exceptions and motion actually raised the same question,

only one need be considered, and the result would control both. A motion for a directed verdict raises the question of whether or not the case is one for the jury. If it is decided that the case should have been sent to the jury, the motion addressed to the Law Court for a new trial may, nevertheless, be in order on other issues, as for example, the question of damages, as was the fact in *Mills* v. *Richardson, supra.* In other words, if the motion for a new trial addressed to the Law Court covers points not included in the exceptions to the refusal to direct a verdict, then both the exceptions and the motion are properly before the Law Court; but if the issues are the same, there is no need of deciding both of them.

In such event, the exceptions are "regarded as waived" by the filing of a general motion addressed to the Law Court. However, as was said in *State* v. *Bobb,* 138 Me. 242, at 246; 25 A. (2nd) 229, while the two methods are available to bring the issue to the attention of the appellate tribunal, "it should not follow, however, that if there be error in perfecting the second method, it is fatal to the first."

The case of *Fort Fairfield* v. *Millinocket,* 136 Me. 426; 12 A. (2nd) 173, is the first case decided after the enactment of Chapter 66, P. L., 1939, now Section 60, Chapter 113, R. S., 1954.

In this case we find an expression similar to the one used in *Symonds* v. *Free Street Corporation,* viz:

> "The exceptions taken to the denial of the defendant's motion for directed verdict and the general motion for a new trial raise the same question. That exception must be regarded as waived."

Undoubtedly, the court meant that the issues, encompassed in the general motion addressed to the Law Court, were no broader than those covered by the exceptions to the refusal to direct a verdict, in which event, there was no reason for deciding both.

The case of *State* v. *Bobb, supra,* was one involving an indictment for a felony. Exceptions were taken by the respondent to a denial of a motion for a directed verdict, and exceptions were taken to a denial of a motion for new trial after verdict. It is to be noted that the respondent did not follow the procedure provided for in Section 30, Chapter 148, R. S., 1954. This procedure authorizes an appeal to the Law Court from the decision of the presiding justice denying a motion for a new trial. The court pointed out that it was without jurisdiction to review a motion for new trial after verdict on exceptions to the refusal of the trial judge to grant such motion. Consequently, because of the failure of the respondent to comply with the statutory procedure relating to an appeal, if his motion for a new trial addressed to the presiding justice constituted a waiver of the exceptions to a refusal to direct a verdict, then he was left without a remedy. The court said:

> "The statute, R. S. Chapter 146 § 27 (Now § 30, Chapter 148, R. S. 1954) by its fiat says that the decision of the presiding justice in felony cases on a motion for a new trial is not final, and that respondent may, by appeal, submit the question to the Law Court. Exceptions to refusal of directed verdict accomplish precisely the same result. Therefore, in felonies, two methods are available to bring the issue to the attention of the appellate tribunal. Both are not necessary. It should not follow, however, that if there be error in perfecting the second method, it is fatal to the first."

The court held that the exceptions to the refusal to direct a verdict for the defendant were not waived by a motion filed with the presiding justice. The decision in *State* v. *Simpson, supra,* was distinguished on the basis that in a misdemeanor case the decision of the presiding justice is final. If such a decision is final, a motion addressed to the presiding justice waives the exceptions to a refusal to direct

a verdict, but does not waive other exceptions pertaining to matters arising during the course of the trial.

The ruling of the court in *State* v. *Bobb, supra,* is equally applicable to civil cases. Consequently, we rule that the filing of a motion addressed to the Law Court, pursuant to the provisions of Section 60, Chapter 113, R. S., 1954, and of Rule XVII, is not a waiver of exceptions taken to the refusal to direct a verdict. Of course, if it develops that the issues to be decided upon the exceptions and the motion are the same, manifestly there is no need of deciding both of them. A decision on one is sufficient.

And, if it should develop that there has been an error in perfecting the general motion, then, as was said in *State* v. *Bobb, supra,* the error is not fatal to the exceptions. Likewise, an error in perfecting the exceptions would not affect the motion.

The decision of *Labbe* v. *Cyr, et al.,* 150 Me. 342; 111 A. (2nd) 330, is of interest. In that case, after a verdict for the plaintiff, the defendant addressed a motion for a new trial to the presiding justice. The motion was denied. Defendant then attempted to prosecute exceptions taken to rulings of the court during the progress of the trial. Plaintiff contended that by his motion for a new trial to the presiding justice, defendant had waived his right of exceptions. In arriving at the decision that exceptions to ruling of the presiding justice during the trial were not waived by motion for a new trial subsequently addressed to the presiding justice, this court, in its opinion, developed in a very interesting and clear-cut manner the historical aspects of cases pertinent to this issue.

The points raised by counsel for the plaintiff to the effect that the evidence was not signed by the presiding justice nor certified by him to the Law Court are not well taken. In support  of his position that the presiding justice should

have signed the transcript of the evidence, plaintiff cites *Hills* v. *Paul,* 116 Me. 12. The decision in this case is based on the then existing statute which was Section 53, Chapter 84, R. S., 1903 (Chapter 87, § 57, R. S., 1916) which provided that:

> "When a motion is made in the Supreme Judicial Court to have a verdict set aside as against law or evidence, a report of the whole evidence shall be signed by the presiding justice."

This section is superseded by § 59, Chapter 113, R. S., 1954, which reads as follows:

> "When a motion is made in the Superior Court to have a verdict set aside as against law or evidence, a report of the whole evidence shall be signed by the presiding justice or authenticated by the certificate of the official court reporter."

Rule XVII is based upon this new section. See *White* v. *Schofield,* 153 Me. 79, at 83; 134 A. (2nd) 755.

The record shows that the evidence which was filed, was authenticated by the certificate of the official court stenographer. This was sufficient compliance with Rule XVII, and it was not necessary for the evidence to be signed by the presiding justice.

As previously indicated, the record, substantiated by the docket entries, shows that a date was set by the presiding justice for the filing of the evidence. True, this was done by him at the time the defendant noted his exceptions to the refusal to grant a directed verdict, but, in our opinion, the entry of a new order by the presiding justice serves no useful purpose.

It is our opinion that the defendant has fully complied with the Rule and that his exceptions and motion are properly before us.

On December 3, 1955, the plaintiff was driving an automobile owned by him, in a general westerly direction on a public highway known as Route 3 in Belmont, Waldo County, Maine. He was proceeding from Belfast to Togus, Maine. At the time in question, the highway for a distance of several miles was under construction. The defendant was the contractor constructing the highway under a contract with the State Highway Commission. At a point about four miles from where the plaintiff first came on to the highway, which was under construction, the defendant, for the purpose of installing a culvert, had dug a ditch which was four feet wide and four feet deep and extended from the northerly side of the highway towards the southerly side a distance of about twenty feet. This twenty feet took up approximately two-thirds of the travelled part of the highway, and, as will be noted, was on the plaintiff's right hand side of the highway. The plaintiff contends that he suddenly found himself in the hole which he did not see before driving his vehicle into it. As a result of the accident, plaintiff suffered an inguinal hernia. He brought this action to recover for property damage and personal injuries, with attendant pain and suffering, and consequential expenses. The evidence clearly shows that there were no barriers, fences, lights or signals indicating the presence of the hole. Neither was there any watchman at the scene and neither were there any workmen in or about the hole at the time of the accident.

The jury returned a verdict for the plaintiff. Defendant bases its motions for a directed verdict and for a new trial on the grounds that plaintiff should be barred from recovery by reason of his contributory negligence.

It seems clear that the jury was justified in finding negligence on the part of the defendant, and so the sole issue before this court is the question of whether or not, under the

circumstances, the plaintiff, as a matter of law, was guilty of contributory negligence.

The plaintiff, in his declaration, alleged his own due care. He further alleged the negligence of the defendant in allowing the excavation to remain open without the protection of barriers, fences, or signals. The plaintiff then alleged that by these acts of negligence, the defendant had created a nuisance.

There is no allegation in the declaration of any duty owed the plaintiff by the defendant. In the case of *Foley* v. *Farnham Company*, 135 Me. 29, at 30, 188 A. 708, it is stated that:

> "In order to maintain an action for injury from negligence, there must be shown to exist some obligation or duty from the person inflicting the injury, to the person on whom it was inflicted, and that such obligation or duty was violated by a want of ordinary care on the part of the defendant."

The allegation of an existing duty and a breach thereof would constitute better pleading. However, the defendant has not raised this issue and the case was tried like an ordinary negligence action.

Moreover, this court has held that:

> "In actions for the recovery of damages for personal injury the duty claimed to have been breached and the breach of it may be pleaded either by forthright assertion or the averment of facts from which the law will imply them." *Glidden* v. *Bath Iron Works Corporation*, 143 Me. 24; 54 A. 2d. 528; *Bartley et al* v. *Couture*, 143 Me. 69; 55 A. 2d. 438.

In this case there are sufficient averments of fact in the declaration from which the law will imply a duty and breach thereof.

Defendant contends that a highway contractor, such as was the defendant at the time of the accident, cannot be guilty of creating a nuisance, while in the performance of duties properly authorized by a contract under which he was operating. As contributory negligence is a defense, not only in an ordinary negligence action, but in cases based on nuisance as well, we do not need to decide this point.

In an action based on nuisance in permitting a telegraph wire to remain across the highway, this court said in *Dickey and Wife* v. *Maine Telegraph Company*, 43 Me. 492, at 496:

> "It was not sufficient for the plaintiffs to prove that the defendants were in fault. To entitle themselves to a verdict, the plaintiffs were bound to show that there was no neglect, or want of ordinary care, contributing to the injury, on the part of the female plaintiff. She was required to exercise due and proper care to protect herself from injury. If her own negligence, or rashness, or want of ordinary care, concurred in producing the injury of which they complained, the plaintiffs ought not to have recovered damages for it, against the defendant company. The burden of proof was on the plaintiffs to show, affirmatively, the exercise of such due and proper care and vigilance, on her part."

In *Benson, Executrix* v. *Titcomb*, 72 Me. 31, at 32, our court said:

> "The steam engine situated, as it was, near the road, may have been a nuisance, but that affords no excuse for carelessness or negligence on the part of the plaintiff's husband. If the rattling of the barrels, and the carelessness of the driver were efficient and contributory causes to the disaster, there cannot be a recovery. If the deceased so far contributed to the misfortune by his own negligence or want of care and caution, that, but for such negligence or want of ordinary care and caution on his part, the misfortune would not have

happened, the plaintiff cannot recover. *Dickey* v. *Maine Telegraph Co*. 43 Maine, 496. The plaintiff must show that he was in the exercise of due care, or that the injury was in no degree attributable to any want of common care on his part."

See also 66 C. J. S. *Nuisances* § 11 b. Page 755, to the effect that contributory negligence is an appropriate defense to an action based on nuisance which is in fact grounded on negligence. For a similar rule, see also, 39 Am. Jur. *Nuisance* § 200, Page 475.

The instant case was tried like an ordinary negligence action. The presiding justice carefully and explicitly explained the law of negligence to the jury, and his charge included adequate instructions upon the issue of contributory negligence. Neither counsel objected to the manner of trial and no exceptions were taken to any portion of the charge of the presiding justice, and no request for additional instructions were made by either counsel.

It is elementary that the law will not allow a party to recover for injuries to which his own negligence contributed as a proximate cause.

"The burden to prove the negligence of the defendant, and to prove that no lack of due care contributed to the injuries, was upon the plaintiffs. *Baker* v. *Transportation Co*., 140 Me. 190; *Rouse* v. *Scott*, 132 Me. 22. The standard of measurement for both parties is, therefore, the care and caution exercised by a person who is ordinarily prudent and thoughtful. One who falls below this level, when in dangerous circumstances, is negligent. The law does not expect the impossible, but it does expect ordinary or reasonable care." *Barlow, Pro Ami* v. *Lowery*, 143 Me. 214, 217; 59 A. 2d. 702.

"In actions of tort to recover damages for personal injuries, a defendant is not liable, unless as be-

tween himself and the plaintiff the negligence of the defendant solely caused the accident and harm." *Rogers* v. *Forgione & Romano Company*, 126 Me. 354, 355; 138 A. 553.

See also *Herson* v. *Charlton*, 151 Me. 161; 116 A. (2nd) 632.

"Care and vigilance on the part of vehicular travelers should always vary, according to the exigencies which require vigilance and attention. An automobile driver is bound to use his eyes, bound to see seasonably that which is open and apparent, and take knowledge of obvious dangers. When he knows, or reasonably ought to know, the danger, it is for him to govern himself suitably. Thoughtless inattention on the highway, as elsewhere in life, spells negligence." *Callahan* v. *Bridges Sons, Inc.*, 128 Me. 346, 348; 147 A. 423.

"A motor vehicle operator is bound 'to use his eyes to see seasonably that which is open and apparent, and take knowledge of obvious dangers. When he knows, or reasonably ought to know, the danger, it is for him to govern himself suitably. Thoughtless inattention on the highway, as elsewhere in life, spells negligence." *Rouse* v. *Scott*, 132 Me. 22, 24; 164 A. 872.

See also *Baker* v. *McGary Transportation Company, Inc.*, 140 Me. 190, 36 A. (2nd) 6; *Spang* v. *Cote*, 144 Me. 338, 343; 68 A. (2nd) 823; *Bridgham* v. *W. H. Hinman Company, Inc.*, 149 Me. 40; 97 A. (2nd) 447.

Now let us consider the evidence in relation to the foregoing decisions of this court. The plaintiff knew that the road upon which he was travelling was under construction. He admitted that he had seen the construction signs on the highway. The weather was clear, the sun was shining, the road was level and straight. The defendant had left a grader close to the excavation. This grader was 25 feet long, 8 feet wide and weighed 10 tons. The plaintiff says

he did not see this grader. The defendant had caused 7 yards of gravel to be dumped near the excavation for purpose of back filling. Plaintiff says he did not see this pile of gravel. A temporary road had been constructed to the left of the excavation and was 14 feet wide. The plaintiff says he did not see this temporary road. Neither did he see the excavation.

It is difficult to conceive how an alert driver could fail to see the large piece of road construction equipment and the large pile of gravel close by the excavation. The driver of a motor vehicle cannot excuse lack of attention by merely stating that he did not see things which are apparent to any prudent person. The law places upon him the responsibility, not only of seeing things which are apparent, but he is charged with the consequences of failing to see what, in the exercise of ordinary care, he should have seen. In the light of proven facts, and of his own admissions, all of his actions indicate that degree of inattention which this court has said many times spells negligence.

We conclude that he was negligent as a matter of law, and that his negligence was a proximate cause of the accident. We are of the opinion that the presiding justice erred in not directing a verdict for the defendant. As the general motion raises the same question presented by the exceptions, there is no need of a ruling on the motion. As to the exceptions, the entry will be:

*Exceptions sustained.*