JOSEPH A. ROY
*vs.*
JOSEPH P. HUARD

Kennebec.    Opinion, October 5, 1961.

*Lester T. Jolovitz,* for plaintiff.

*Jerome F. Daviau,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN DUBORD, SIDDALL, JJ.

WEBBER, J. In this case both plaintiff and defendant appeal from a judgment, the plaintiff on the ground that damages fixed by the jury were inadequate, and the defendant because as he avers he has incurred no liability to plaintiff. The essential facts are not in dispute and may be briefly stated.

Plaintiff, a real estate broker, was authorized in writing by the defendant to undertake the sale of the latter's home for an agreed commission of five per cent of the sale price "whether or not the sale price is the original asking price." The asking price agreed upon was $14,700. The agreement executed by the defendant further provided: "The owner or seller hereby agrees and promises to execute a warranty deed of the above listed property if the sale is made in accordance with this contract of sale or any alteration hereof mutually agreed upon." Under well established principles of law the plaintiff could satisfy this contract and earn his commission by producing a customer who was and remained ready, willing and able to purchase the property upon the exact terms offered by the defendant or upon modified terms satisfactory to and accepted by the defendant. In due course the plaintiff produced customers who offered $14,500 for the house. This offer was accepted by the defendant and thereupon a written contract of sale was executed by the defendant and the proposed purchasers. When the time arrived for consummation of the sale by execution and delivery of a proper deed, the defendant declined to perform his contract and informed the plaintiff

that the former's wife, owner of an interest as joint tenant, refused to convey her interest. No sale thereafter resulted.

Without objection on the part of the plaintiff, the defendant was permitted to inject into the case the erroneous theory that if the plaintiff knew at the beginning of his dealings with the defendant that the wife had an interest, he had the burden of proving himself free of negligence in not obtaining the wife's consent to his listing and the subsequent contract of purchase. This additional burden of proof was incorporated into the charge to the jury and was successfully carried by the plaintiff as evidenced by a verdict in his favor. The verdict, however, was for $144 when it is apparent that the only verdict possible in this case was one for $725.

The issue as to whether or not a broker is entitled to commission when the sale to his customer is prevented by the refusal of the wife of the principal to join in a conveyance appears to be one of novel impression in this state. The point has, however, been considered many times in other jurisdictions. The rule which we deem to be the better reasoned and which finds support in the great majority of cases bearing on the point would not deny the broker his commission even though he knew when he contracted with the husband that the joinder of the wife in a later conveyance would be necessary to perfect a sale. It must be borne in mind that the contract of hire is only between husband and broker. There is no attempt to charge the wife with liability for any portion of the commission and therefore no necessity to prove that her husband acted as her agent in the employment of the broker. What is really involved is the right of the broker to proceed with his contract on the assumption that the principal will be able to make his title good and procure his wife's joinder when the sale occurs. If this assumption is reasonable, the broker has no duty to

approach the wife for her consent. As was stated in *Campbell* v. *Arthur H. Campbell & Co.* (1927), 155 Tenn. 515, 296 S. W. 9:

"This is rather a case in which there has been a default in performance on the part of the seller. In our opinion, when the husband assumes to have authority to offer for sale land owned by himself and wife, this amounts to a representation that he has such authority. If under such circumstances, the husband employs a real estate broker to bring about a sale of the land, and the broker procures a purchaser for the land, we think, as against the husband, the broker is entitled to his commission. Such right of the broker against the husband cannot be defeated by the refusal of the wife to join in a conveyance. We think that in the great majority of cases the husband attends to the business for the family, and we think the broker has a right to rely on the husband's assumption of authority and his implied representation that the wife will join in the necessary title papers. A like conclusion has been reached in all the decisions which we have examined."

Reaching the same result, the court in *Hamlin* v. *Schulte* (1886), 34 Minn. 534, 537, 27 N. W. 301, reasoned that any other result would permit the principal not only to disappoint the purchaser but to deprive the broker of his compensation, fairly earned, through collusion with the wife or because of the husband's inability to persuade her to join in the conveyance. In *Staley* v. *Hufford* (1906), 73 Kan. 686, 85 P. 763, the court viewed the inability of the principal to persuade his wife to join as presenting a situation in which, as a matter of law, the consummation of the sale is prevented by the fault of the principal. For like reasons the same result was reached in *Mackenzie* v. *Standenmayer* (1921), 175 Wis. 373, 185 N. W. 286; *Tebo* v. *Mitchell* (1905) (Del. Sup.), 5 Pennewill 356, 63 A. 327; *Rick* v.

*Moyer* (1929), 296 Pa. 176, 145 A. 793; *Aler* v. *Plowman* (1948), 190 Md. 631, 59 A. (2nd) 196; *Max Broock, Inc.* v. *Walker* (1957), 349 Mich. 63, 84 N. W. (2nd) 336; *Weltman's, Inc.* v. *Friedman* (1952), 102 F. Supp. 485; *Price* v. *Francis* (1945), 184 Va. 484, 35 S. E. (2nd) 823; See Anno. 156 A. L. R. 1398.

The California court stated the rule in these terms: "Indeed, it is the general rule that the refusal of the wife of the owner to join in the conveyance of the property to the proposed vendee does not, itself, in a case of this character, operate to deprive the broker of his right to compensation." *Russell* v. *Ramm* (1927), 200 Cal. 348, 254 P. 532, 539. Followed in *McAlinden* v. *Nelson* (1953), 262 P. (2nd) (Cal.) 627.

In *Peters* v. *Coleman* (1953), 263 S. W. (2nd) (Texas) 639, 643, the court said: "Nor will the refusal of the principal's wife to execute a conveyance affect the broker's right to a commission, even though he knew that her joinder was necessary to make a valid conveyance. * * * *If (the principal) desired to make his liability for the commission conditioned on the acquiescence of his wife, he should have put that condition in his contract with (the broker). * * * * Where a husband agrees to pay a commission for the sale of his wife's separate real property, he is liable therefor although she refuses to execute the conveyance." (Emphasis ours.)

When a principal inserted such a condition in his contract with the broker, he was protected from liability in *Hensley Ins. Co.* v. *Echols* (1947), 159 Fla. 324, 31 So. (2nd) 625.

In the instant case the broker enjoyed the additional protection of the above-quoted express contractual obligation of his principal to "execute a warranty deed." Clearly the parties intended that the principal was bound to furnish a good title. The broker was justified in proceed-

ing to find a purchaser on the assumption that the principal either held or would acquire a good title in the listed property and would place himself in a position to transfer such title by a warranty deed executed by himself and his wife in consummation of any satisfactory sale arranged by the broker. Thereafter, the duty to deal with the wife devolved exclusively upon the principal.

We neither intimate nor suggest what result we might reach in a case in which it was shown, not only that the broker knew of the wife's outstanding interest, but also knew *that she did not presently intend to release it*, especially where there was present an unqualified contractual promise to furnish a good title. It is enough to say that there is no suggestion in the case before us that the broker knew or had reason to know of any such intent on the part of the wife. We do hold that mere knowledge on the part of the broker that the principal's wife held some interest in the property to be sold could not defeat the broker's recovery in the absence of some condition in the listing contract protecting the principal. Husbands may reasonably be expected to consult their wives before listing property with brokers for sale.

One other matter may be disposed of briefly. Counsel for defendant asserts that the broker failed to earn his commission because he procured no more than an option to purchase as between his principal and his customer. He mistakenly relies upon *MacNeill Real Estate v. Rines, et al.*, 144 Me. 27. In that case the sale was prevented *by fault of the purchaser* and the issue was whether the broker had effectively bound the purchaser by a mutually enforceable contract. The applicable rule was stated in *Labbe v. Cyr*, 150 Me. 342, in which the broker procured only an option but the sale was prevented *by fault of the seller*. In *Labbe* at page 348 we distinguished *MacNeill* and pointed out that the opinion in *MacNeill* had recognized that the broker

earns his commission by producing a purchaser who is and remains ready, willing and able to buy the property on terms acceptable to the principal, where the consummation of the sale is prevented *by fault of the seller*. In view of the application of this rule which finds almost universal acceptance, it is unnecessary here to point out why and in what respects the agreement executed by the principal and the customers in the instant case constituted a mutually enforceable contract rather than a mere option.

The application of the foregoing rules of law to the facts of this case permits of but one result. The lack of dispute as to any material issue of fact left no necessity for jury determination. The amount of the commission earned was fixed by the contract of the parties and involved only a simple mathematical computation. The plaintiff, however, addressed no motion for a directed verdict to the presiding justice, nor did he seasonably file a motion for verdict notwithstanding the judgment. The denial of either motion, if properly made, would have constituted legal error. With a verdict of $725 the only possible legally correct result on the undisputed facts of this case, we turn our attention to the appropriate action to be taken by the Law Court on the plaintiff's appeal from an erroneous judgment.

That a new trial may in an appropriate case be limited to the assessment of damages as the sole issue has heretofore been decided. *Cosgrove* v. *Fogg, et al.*, 152 Me. 464. We find no prior decision in Maine, however, bearing on the authority of the Law Court to order judgment for an amount in excess of verdict where the exact amount to be recovered is fixed by legal principles applied to undisputed facts. The procedure established by Rule 50, M. R. C. P., requires the seasonable filing with the presiding justice of a motion for judgment notwithstanding the verdict. As already noted, no such motion was filed by the plaintiff in this case. Even though we recognize that only one judgment is possible in

this case, we are reluctant to order that judgment forthwith in the absence of such motion. We prefer to employ the mechanics of conditioning an order for new trial.

The entry will be

*Defendant's appeal denied.*

*Plaintiff's appeal sustained.*

*New trial ordered as to damages only unless within 30 days after the filing of the Mandate, defendant consents by stipulation to the entry of judgment for plaintiff for $725 and costs.*