**William PERRY and Nancy Perry, d/b/a Century House Real Estate**

v.

**Carol MacARTHUR and Douglas MacArthur.**

Supreme Judicial Court of Maine.

June 3, 1976.

Appeal sustained.

Shiro & Jabar by John P. Jabar, J. William Batten, Waterville, for plaintiffs.

Alan C. Sherman, Robert J. Ringer, Jr., Waterville, for defendants.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

This case involves a claim of right to a commission on the sale of real estate. The action was brought in the District Court; defendants prevailed. On appeal from that judgment to the Superior Court, the plaintiffs prevailed and the District Court judgment was reversed. Before us is a timely appeal from such judgment.

We sustain the appeal.

The facts of this case are set forth in the decision of the District Court Judge and in his statement of evidence as settled and approved under Rule 75(c), D.C.Civ.R. Those documents establish the following.

In July 1973 appellant Douglas MacArthur gave the appellees an open listing at $50,000 for purposes of selling a house which he and his wife, Carol MacArthur, owned jointly. Appellee Nancy Perry admitted that at the time of the listing she was aware that the MacArthurs were experiencing marital difficulties and that Mrs. MacArthur might not assent to the sale. Mrs. Perry had several conversations with Mrs. MacArthur in the course of which Mrs. MacArthur stated that she could not agree to a sale of the house until she and her husband came to some agreement as to the disposition of marital property.

At some point the appellees produced buyers [Mr. and Mrs. Carnes] who were willing to purchase the house for $43,000. Mr. MacArthur signed an agreement stating that he was willing to sell at that price and a closing date was set. Mrs. MacArthur did not appear at the bank on the day of closing. She later testified that she had made it clear to both the Perrys and the

prospective purchasers that she did not intend to sell the house.

Eventually, the listing was removed from the Perrys and the Carnes' deposit was returned to them. Following that, Mrs. MacArthur negotiated directly with the Carnes, and a sale of the house and certain items of personal property was consummated for $45,300.

Appellees then instituted the action for their commission which ultimately resulted in this appeal.

At the close of the hearing in the District Court, the presiding Judge issued findings which established in pertinent part:

"It is obvious from the evidence that the plaintiffs were aware of the difficulties existing between the defendants and also that they were aware that Mrs. Mac-Arthur might not sign.

"I find that there was no contractual relationship between the plaintiffs and the defendant, Carol MacArthur, nor was there any participation on her part in the sales agreement of July 24, 1973. The plaintiffs were unable to complete the sale because of a lack of participation by the defendant, Carol MacArthur, a situation which was to some extent anticipated by them."

On appeal the Superior Court Justice focused on Mrs. MacArthur's statement that she would sell the house if she could reach an agreement with her husband and reasoned that since Mrs. MacArthur eventually decided to sell the house it follows *a fortiori* that she reached some agreement with her husband. The sale had the effect of "ratifying" her husband's contract with the appellees and thus Mr. MacArthur became liable to appellees for their commission.

With that reasoning we cannot agree.

The undisputed facts support the District Court Judge's conclusion that no contractual relationship existed between Mrs. MacArthur and appellees and that the subsequent sale of the MacArthur property was independent of Mr. MacArthur's contract with appellees. Mrs. MacArthur made it clear to the appellees that she did not at that time intend to sell her interest in the house, and the eventual agreement to sell was entered into after appellees' listing had been removed and after the prospective purchasers had been refunded their money. We fail to perceive how Mrs. MacArthur's actions could be said to ratify a contract which had already been extinguished.

In their brief appellees urge that the result reached by the Superior Court is mandated by *Roy v. Huard,* 157 Me. 477, 174 A.2d 41 (1961). We answer that their reliance on *Huard* is misplaced.

As is the case in the instant appeal, *Huard* involved an action brought by a broker for his commission upon his production of a ready, willing, and able buyer for a certain piece of jointly owned real estate and the subsequent refusal of the spouse with whom he had not dealt [the wife] to convey her interest in the property. In those circumstances it was held that the broker ought not to be deprived of his commission. The contracting spouse [the husband] was forced to bear the burden of his inability to persuade his wife to join in the conveyance.

The facts in *Huard* contain, however, an important distinction from the case at bar. In *Huard,* the broker was unaware that the noncontracting spouse might be unwilling to relinquish her interest in the property. The court emphasized the significance of that fact and was careful to leave unanswered the question of liability where a broker knows at the outset that one of the joint owners of realty does not intend to sell.

"We neither intimate nor suggest what result we might reach in a case in which it was shown, not only that the broker knew of the wife's outstanding interest,

but also knew *that she did not presently intend to release it,* especially where there was present an unqualified contractual promise to furnish a good title." (Emphasis in original). 157 Me. at 482, 174 A.2d at 44.

Since, by their own admission, the realtors in this action were aware that Mrs. MacArthur did not intend to sell her interest in the property, the question left open in *Huard* is now squarely before us. We determine that the decision of the District Court Judge denying appellees a brokerage commission was correct as a matter of law.

In *Huard,* supra, 174 A.2d at 43, we cited with approval a statement of the Tennessee court in *Campbell v. Arthur H. Campbell & Co.,* 155 Tenn. 515, 296 S.W. 9 (1927), to the effect that a broker has a right to rely on a husband's "assumption of authority" to act for his wife and his "implied representations" that his wife will join in the sale of jointly owned property. While the premise underlying that statement—i. e., that the husband invariably handles the business affairs for the family—might well be brought into question, the outcome of this appeal does not hinge upon the validity of the Tennessee court's reasoning. Even assuming that in most cases a husband has implied authority to act for his wife, in this case the brokers had no right to rely on any such authority on the part of Mr. MacArthur since Mrs. MacArthur made it clear at the outset that her husband was not acting for her and that she would not relinquish her interest in the realty.

■ The result we reach today is in accordance with the majority rule on the subject [*see, Pasley v Barber,* Alas., 368 P.2d 549 (1962) ; *Hurt v. Sands Co.,* 236 Ky. 729, 33 S.W.2d 653 (1930) ; *Bewley & Rader Land Co. v. Whitaker,* 29 Tenn.App. 106, 194 S.W.2d 244 (1945) ; Annot., 10 A.L.R.3d (1966)] and follows logically from the general principle that a broker has no right to a commission where the

failure to consummate a sale is attributable to circumstances or conditions [e. g., a defect in title] of which he has knowledge. *Davidson v. Vandegrift,* 292 F.2d 651 (10th Cir. 1961) ; *Hurt v. Sands Co.,* supra; *Best v. Kelley,* 72 Wash. 257, 155 P.2d 794 (1945).

The entry must be :

Appeal sustained.

WEATHERBEE, J., sat at argument but died before the opinion was adopted.

All Justices concurring.