PORTIS *v.* THRASH.

4-9117                                                  229 S. W. 2d 127

Opinion delivered March 27, 1950.

Rehearing denied May 15, 1950.

*E. L. Carter, George F. Carter, Malcolm W. Gannaway* and *James B. Gannaway,* for appellant.

*Wood & Chesnutt,* for appellee.

ED. F. McFADDIN, Justice. This case involves the effort of a real estate broker to recover his commission. Thrash, appellee, filed action in the Circuit Court, claiming:

(1)—That on February 20, 1948, appellant, Mrs. C. E. Portis, signed a written contract with appellee, by the terms of which Mrs. Porits agreed to pay appellee a commission of five per cent, if within ninety days he produced a purchaser ready, able, and willing to buy Mrs. Portis' home for the price of $23,000;

(2)—That Thrash, within said time limit, produced such a purchaser who offered to pay the entire $23,000 either in cash, or on any terms desired by Mrs. Portis;

(3)—That Mrs. Portis refused to complete the sale; and

(4)—That Thrash was entitled to his commission of $1,150.

In her answer, Mrs. Portis did not specifically deny the signing of the contract but claimed:

(1)—That the contract was signed on condition that it would not be valid until approved by her husband, which approval was never accomplished;

(2)—That she cancelled the contract the day after it was signed; and

(3)—That the property covered by the contract was joint property as well as homestead, and appellant knew this fact; and this constituted a defect in the title so as to prevent plaintiff from recovering.

On appellant's motion the case was transferred to Chancery; and a trial resulted in a decree for plaintiff for the commission of $1,150. On this appeal appellant presents the contentions contained in her answer, as above listed.

I. *Contract Signed on Condition.* Mrs. Portis testified before the Court that the contract was signed by her on condition that it would not be valid until approved by her husband; that Mr. Portis refused to approve the contract: and, that the contract never came into existence. In *American Sales Book Company* v. *Whitaker,* 100 Ark. 360, 140 S. W. 132, 37 L. R. A., N. S. 91, we recognized the rule of our earlier cases, to the effect that if a signed instrument was not actually delivered as a binding contract but was delivered with the understanding that it should be held without becoming effective until after the happening of an event, then the signed instrument would not be a binding contract unless the stipulated event occurred.

Mrs. Portis' testimony would have supported a holding in her favor in the light of the above mentioned case. But Mr. Rose, the salesman who represented appellee in the contract negotiated with Mrs. Portis, testified that the contract was signed and delivered as an unconditional instrument. He said:

"Q. Did you or not tell her that you understood that it would not be binding until Mr. Portis signed it?

"A. Well, when I was down getting a listing I asked for Mr. Portis' signature. That is when she told me, that whatever she did would be all right with Mr. Portis . . ."
The salesman is inferentially supported by letters subsequently written by Mrs. Portis to appellee. The original contract was exhibited to Mrs. Portis while she was testifying:

"Q. That is your signature?

"A. That is my signature."

Mrs. Portis also claimed that the sales price was to be $23,000 net to her, although she admitted that the contract did not so state.

A question of fact was made as to whether the contract was fairly obtained or signed on condition. We cannot say that the finding of the Chancery Court on the

fact question is against the preponderance of the evidence. See *Murphy* v. *Osborne,* 211 Ark. 319, 200 S. W. 2d 517.

II. *The Issue as to Cancellation.* Mrs. Portis testified that the day after the contract was signed, she notified appellee that the contract was cancelled. In the light of *Nance* v. *McDougald,* 211 Ark. 800, 202 S. W. 2d 583, Mrs. Portis' testimony would have supported a decree in her favor to the extent that Thrash could recover only his damages but not his commission. But again the answer is that the testimony of appellee and his salesman contradicts Mrs. Portis, and her letters, previously mentioned, inferentially support appellee; so we cannot say that the Chancellor's finding on the fact question—as to whether the contract was cancelled—is against the preponderance of the evidence.

III. *Known Defect in the Title.* Finally, appellant insists that Thrash knew the property was the homestead, as well as the joint property of Mr. and Mrs. Portis, and that no valid conveyance of it could be made unless the instrument be signed and acknowledged by both husband and wife (see § 50-415 Ark. Stats. 1947). Because of the foregoing, appellant contends that appellee's knowledge of the status of the title was the same as the knowledge of a title defect; and quotes from *Southern Trust Company* v. *Bunch,* 159 Ark. 47, 251 S. W. 674:

"If at the time a broker makes sale of property he has knowledge of, or information of defects in the title, and by reason of these defects the sale cannot be made effective, he is not entitled to his commission."

Appellant also cites and quotes from *Burnham* v. *Upton,* 174 Mass. 408, 54 N. E. 73, and *Hurst* v. *Sands Co.,* 236 Ky. 729, 33 S. W. 2d 653. To these may well be added 9 C. J. 627; 12 C. J. S. 225; 8 Am. Jur. 1098; and Annotation in 156 A. L. R. 1398 and 169 A. L. R. 605. The law, as above quoted from *Southern Trust Company* v. *Bunch, supra,* has been frequently reaffirmed, and is in no way impaired by our holding the present case.

The appellant's contention is contrary to the effect of our holdings in *Branch* v. *Moore,* 84 Ark. 462, 105 S. W.

1178, 120 Am. St. Rep. 78; *Chandler* v. *Gaines-Ferguson Realty Co.*, 145 Ark. 262, 224 S. W. 484; and *Reynolds* v. *Ashabranner,* 212 Ark. 718, 207 S. W. 2d 304. The non-joinder of a spouse in the anticipated conveyance is not a "defect in title" within the rule of *Southern Trust Company* v. *Bunch, supra.* A "defect in title" (as that expression is used in cases like this one) means something existing at the time of the contract and not the future possibilities of the refusal of a spouse to join in the conveyance. In *Reynolds* v. *Ashabranner, supra,* the property was owned by entirety; and the real estate broker recovered judgment against the spouse who signed the contract, notwithstanding the refusal of the other spouse to agree to the conveyance. The holding in that case is ruling in the case at bar.

Affirmed.