No. 17,504.

C. A. GRAY v. JAMES BLAKE.
(283 P. [2d] 1078)

Decided May 23, 1955.

Mr. BERTON T. GOBBLE, for plaintiff in error.

Mr. GEORGE A. EPPERSON, Mr. DONALD F. McCLARY, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the Court.

DEFENDANT in error James Blake and his wife were owners in joint tenancy of ranch property in Morgan county, Colorado. C. A. Gray, plaintiff in error, was a real-estate broker with whom Blake listed the property for sale on October 6, 1950, and on March 15, 1951, renewed or reaffirmed the listing. In March of 1951, Earl G. Nichol, one of Gray's representatives, submitted to

Blake a document entitled "Agreement to Purchase Real Estate," which was an offer on the part of one Kincheloe to buy the Blake property for $18.00 per acre as listed, with reservations of one-half the oil and mineral rights, together with the buyer's check in the sum of $1,000.00. The check was delivered to Blake who signed the agreement. Abstracts of title were delivered to purchaser for examination and Gray testified that at that time was the first knowledge he or his representative had that Mrs. Blake was a joint owner of the property as shown by the abstract examination. It is disclosed that the wife knew the property had been listed with plaintiff for sale and on more than one occasion she showed the property to prospective purchasers produced by Gray. Mrs. Blake, the wife, did not sign the contract. However, as the agreement specified, the purchaser tendered in cash the balance of the purchase price to Blake and demanded a deed signed by both Mr. and Mrs. Blake. Mrs. Blake refused to sign the deed and gave as reason that the price was too low and it was too late in the year. Gray filed an action against Blake to recover commission he claimed to have earned. After the issues were formed, trial was had to a jury which returned a verdict in favor of defendant. Gray, plaintiff in error, procured the issuance of a writ of error from this Court in case No. 17,005, and an opinion reversing the judgment was rendered October 26, 1953, *Gray v. Blake,* 128 Colo. 381, 262 P. (2d) 741. In a word, the reversal was based upon the giving of improper instructions and refusal to give certain requested instructions, and a new trial was directed. The matter again came on for hearing before a jury on the 14th day of June 1954, and it being made to appear that Earl G. Nichol, a main witness and the agent or representative of plaintiff, had died on July 4, 1953, his testimony as read from the original transcript was received. The testimony of C. A. Gray, B. Rolland, Gray, Chester Kincheloe, James Blake and Faye Blake was introduced and the matter sub-

mitted to a jury upon instructions indicated in our opinion delivered by Mr. Justice Knauss in *Gray v. Blake, supra*. The jury returned its verdict in favor of defendant James Blake June 15, 1954, and Gray specifies error to the judgment entered on the verdict and summarizes argument in support thereof generally to the effect that the court erred in refusing to give plaintiff's requested instructions 1, 2 and 3, and in giving instructions No. 3, 4 and 7. The pivotal point in the instant case is the question of whether or not Gray or his representative knew, or had reason to believe, that the property listed by Blake for sale was owned in joint tenancy, and if they had such knowledge, then their failure to obtain the wife's signature on the contract precluded their right of recovery. Counsel for plaintiff contends, and his contention is supported by some authorities, that Gray's right to recover a commission was fixed when he carried out his part; rendered the services and produced a buyer ready, able and willing to purchase the land, regardless of whether the wife had joined in the contract or not, because he had a right to rely as a cause of action against Blake, the husband, that Blake had authority to act in the premises. However, it is said in the opinion in *Gray v. Blake, supra,* "If Gray knew at the time of the listing by the husband that the wife was a joint owner of the property; did not obtain a listing from her; and she declined to join in a conveyance with her husband; Gray could not recover a commission."

We find it unnecessary to set out in the instant case, and discuss, all of the instructions tendered and refused and the instructions given, because we believe that the solution of this litigation in accord with *Gray v. Blake, supra,* is to be found in instruction No. 7, which is as follows:

"You are instructed that where a husband gives a real estate broker a listing to sell property standing in the name of the husband and wife, the broker has a right to rely on the husband's assumption of authority and his

implied representation that he had a right to make such listing. Such husband cannot avoid liability for commission on the grounds that he is unable to complete the transaction because his wife refused to join in the contract of sale or deed of conveyances, provided however, that if the broker knew that the wife was the joint owner of the property; did not obtain a listing from her and that she declined to join in the conveyance with her husband, then such broker cannot recover a commission."

It thus appears that the question of knowledge on the part of Gray or his representative as to the joint tenancy was properly submitted to the jury and there is ample evidence to support its resolution of that question in defendant's favor, because, in the early fall of 1949, and before the first listing, Nichol, as disclosed by his testimony, knew of the joint tenancy situation, and seemed to realize that it was necessary to get Mrs. Blake's signature, because he made inquiry of Blake concerning the matter as is shown by the following testimony of Blake concerning the matter when he first was approached by Nichol:

"Q. What did he say to you about selling your place? A. Well, he said I was — well, that he had been down to Andrew's, and Andrew had said that I might sell it. Q. Who is 'Andrew'? A. That is my brother. Q. What else did Mr. Nichol say? A. He says, 'Let me see. How is your place listed? Is it listed in the name of James and Faye Blake the same as this place is in the name of McCurdy and McLagan?' I said, 'Yes.' He got in the car and went on." Nichol's testimony revealed the following: "Q. What happened on the 16th of March between yourself and Mr. Blake? A. Well, I told him that we had the contract and I showed it to him and asked him to take it in and have his wife sign it. He said, 'We will be to town this afternoon and we will come in the office and sign it.' * * * Q. Did you ask for Mrs. Blake's signature on the 16th? A. I asked for both of them. Q.

Then what happened next? A. I drove back to town and waited until about half-past six. They didn't show up. I went out there on the 17th. * * * Q. Then what happened? A. Well, on the 17th, I went out and told him that I had waited there in the office until after six o'clock and then, I think, is when he told me that his wife was objecting to signing the contract."

The above is significant in establishing knowledge of Gray or his agent, and of course, the knowledge of the agent is imputed to the principal. The objections to instructions given, and the contents of instructions offered by plaintiff, we believe are summed up in instruction No. 7 above quoted. We find no error in other instructions, which seemed to properly cover the law as enunciated in *Gray v. Blake, supra,* and there being ample evidence to support the verdict of the jury, the judgment entered thereon is affirmed.