No. 18,658.

MORRISON & MORRISON, INC. *v.* LOUIS SUNSHINE.

(351 P. [2d] 897)

Decided May 2, 1960.    Rehearing denied May 23, 1960.

Messrs. LEE, BRYANS, KELLY & STANSFIELD, Mr. FLETCHER THOMAS, Mr. DONALD D. CAWELTI, for plaintiff in error.

Messrs. CHUTKOW & ATLER, Mr. EDWARD I. HALIGMAN, for defendant in error.

*En Banc.*

PER CURIAM.

THE parties appear here as they appeared in the trial court, and will be referred to as plaintiff and defendant or by name.

On July 29, 1954, the defendant and his wife, Esther, were the owners in joint tenancy of certain business property located in Denver. On the above date the defendant, without the knowledge, sanction or consent of his wife, contacted the defendant realtor for the purpose of engaging it to find a buyer for the property. As an outgrowth of this contact the parties hereto entered into the following contract:

"Denver, Colo., *July 29, 1954*
"MORRISON & MORRISON, INC.

"In consideration of One Dollar ($1.00) and other valuable consideration, I hereby give you exclusive agency for the sale of the property described on the reverse side of this card.

"1. For the sum of *$85,000* or such other sum as I may hereafter accept, upon which sum I agree to pay you commission allowed by the Denver Real Estate Exchange.

"I agree to furnish an abstract showing merchantable title in me and convey by warranty deed free and clear of all liens except *1st Trust Deed.*

"The above commission to be paid to you at the time of sale, whether sale be effected by you or any other person or agent or myself, on or before *Oct. 29, 1954,* or thereafter until I give you 15 days' written notice of the termination of this agency.

"I agree to give possession ................... days after signing Contract of Sale.

"Accepted:

Louis Sunshine

"We accept conditions of above contract and agree to be bound by its terms.

"MORRISON & MORRISON, INC.
By J. Herschel White"

Acting pursuant to this contract, plaintiff, *prior to October 29, 1954,* advertised the property for sale, showed it to a few prospects, but did not produce a buyer. *After October 29, 1954,* plaintiff continued in its

efforts to find a buyer, but without success. On May 12, 1955, the defendant and his wife conveyed the property to Earl B. and Lillian Lewis. This sale was in no way connected with plaintiff's efforts, but arose out of the efforts of a non-realtor friend of the Sunshines.

On learning of this sale, plaintiff demanded a commission as provided in the above contract. The defendant refused to pay the commission; whereupon the plaintiff instituted this action against the defendant and Esther Sunshine.

Plaintiff in its complaint set forth facts as outlined above and further alleged that the defendant Louis Sunshine executed the exclusive listing contract:

"* * * With the knowledge of, on behalf of, and for the benefit of defendant Esther Sunshine."

The defendant and Esther Sunshine answered, setting up several defenses, including the defense that the complaint does not state a claim for which relief can be granted.

Testimony presented at the trial clearly and conclusively disclosed the fact that on October 1, 1953, when the Sunshines acquired the property involved herein, the plaintiff acted as agent for the seller, prepared the deed by which the property was conveyed to Louis and Esther Sunshine, as joint tenants, prepared a note and deed of trust for the signatures of the Sunshines, handled the financing of the balance of the purchase price owing by the Sunshines, and were making collections on this balance at the time of the signing by Louis Sunshine of the listing contract and also at the time of the sale of the property by the Sunshines.

Thus it was established beyond a doubt and not denied by plaintiff that at the time Louis Sunshine signed the contract on which plaintiff predicates its action, plaintiff actually *knew or had reason to believe* that the property listed by Louis Sunshine for sale was owned in joint tenancy by Louis and Esther Sunshine.

At the close of plaintiff's case a motion was made in

behalf of Louis Sunshine and Esther Sunshine for dismissal. This motion was sustained as to Esther Sunshine and denied as to Louis Sunshine.

After the parties had completed the testimony and rested, each moved for a directed verdict. Both motions were denied and the matter submitted to the jury, which found the issues in favor of the defendant. Whereupon judgment was entered in favor of defendant. The plaintiff is here by writ of error urging numerous alleged errors as grounds for reversal.

We conclude that defendant's motion for dismissal at the close of plaintiff's case should have been sustained under the authority of *Gray v. Blake,* 128 Colo. 381, 262 P. (2d) 741, and *Gray v. Blake,* 131 Colo. 560, 283 P. (2d) 1078.

It having been definitely established that at the time of the execution of the listing contract the plaintiff *knew, or had reason to believe,* that the property stood in the names of Louis and Esther Sunshine, as joint tenants, and that Esther did not sign the listing contract, this case falls squarely within the following language in the two Blake cases, which preclude plaintiff from recovering any commission.

In *Gray v. Blake,* 128 Colo. 381, 262 P. (2d) 741, it is said:

"* * * If Gray [the realtor] knew at the time of the listing by the husband that the wife was a joint owner of the property; did not obtain a listing from her; and she declined to join in a conveyance with her husband; Gray could not recover a commission."

In *Gray v. Blake,* 131 Colo. 560, 283 P. (2d) 1078, it is said:

"* * * The pivotal point in the instant case is the question of whether or not Gray or his representative knew, or had reason to believe, that the property listed by Blake for sale was owned in joint tenancy, and if they had such knowledge, then their failure to obtain the

wife's signature on the contract precluded their right of recovery. * * *."

In the above cases the realtor actually procured a buyer and he was denied his promised commission because the wife, joint owner of the property, had not signed the contract engaging the services of the real estate broker.

From the above it follows, a fortiori, that plaintiff in the case before us, who had not found a buyer, could not claim a commission.

The defendant's motion for dismissal at the close of plaintiff's testimony should have been sustained; for the same reasons, defendant's motion for a directed verdict at the close of all of the testimony should have been sustained. Any jury verdict other than one in favor of defendant would have to be set aside.

Cases supporting the rule of law stated in *Gray v. Blake,* supra, are: *Renick v. Mann,* 194 Ky. 251, 238 S.W. 763 (1922), a case wherein title stood in the name of the wife alone and only the husband signed the listing contract; also, *Best v. Kelley,* 22 Wash. (2d) 257, 155 P. (2d) 794, wherein the court said:

"We approve the rule adopted by the supreme court of Kentucky in the case of Renick v. Mann, supra (with the exception noted by that court), to the effect that if a broker, at the time he accepts a listing from the owner, knows of any defect in the owner's title, or is aware of facts sufficient to put a reasonably prudent person on inquiry, which if followed with reasonable diligence would advise him of any such defect, the broker is not entitled to recover a commission, if the sale fails because of such defect."

In reaching our conclusion here, we are not unmindful of a contrary rule followed by courts of other states.

The judgment is affirmed.

MR. JUSTICE FRANTZ dissents.