John PASLEY, d/b/a Pasley Real Estate,
Appellant,

v.

Phyllis E. BARBER, Appellee.

No. 128.

Supreme Court of Alaska.

Feb. 6, 1962.

Eugene V. Miller and Eugene R. Belland, Fairbanks, for appellant.

T. N. Gore, Jr., Fairbanks, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

NESBETT, Chief Justice.

The appellant real estate broker's sales agent was also employed as bookkeeper for appellee's business and was generally familiar with and advised appellee concerning her business affairs. The principal question to be decided is whether appellant was correctly denied recovery of his real estate commission by the trial court because his salesman knew or should have

known that appellee was unable to convey clear title to the property listed for sale, it being then involved in divorce litigation.

The facts are that on October 29, 1959, appellee, in writing, listed the A–1 Record Shop of Fairbanks, Alaska, for sale with appellant. The real estate broker's employment contract was made through appellant's salesman and agent, Joseph Gale. It was exclusive for a period of 30 days and provided that appellee would furnish marketable title. Through the efforts of Gale and within the 30 day period a purchaser was obtained who signed an earnest money contract offering to purchase the shop on the listed terms. This contract was signed by the prospective purchaser on November 19, 1959 and accepted in writing, on the same contract form, by appellee on November 20, 1959. On the same form and on the same date appellee signed a separate agreement to pay appellant a commission of 10% for services rendered in the transaction.

Appellee refused to go through with the transaction and this suit for recovery of real estate broker's commission was filed. Judgment was entered against appellee for failure to answer, which was later vacated on a showing of inadvertence. After trial before the court without a jury, judgment was entered against appellant.

Appellee testified that she was the operator and owner of the business she asked appellant to sell; that the leasehold upon which the business was located was in her name alone; that at the time she purchased the property an inventory was taken and that she purchased the inventory from the owner and a local bank, and that she was the only person who could draw checks on the business checking account. Appellee admitted signing the broker's employment contract and that appellant had produced not one, but two prospective purchasers within the 30 day period of the exclusive listing; that the prospective purchasers had both signed earnest money agreements and that she signed one of the agreements when they were brought to

her by Gale. Appellee testified that after the earnest money agreement was signed she had several discussions with that purchaser who told her on one occasion that he had been led to believe that she would discount the merchandise in the store by 10% and on another occasion that he would hold a sale out of which she would realize something instead of the 10% discount. Appellee stated that she refused to go through with the sale because of these conversations and because of the fact that her husband, in the pending divorce action, claimed a $16,000 interest in the inventory and that she could not convey clear title. She also testified that after her refusal to go through with the sale, the purchaser threatened suit for expenses incurred by him in going to Anchorage to raise money to complete the purchase and that she had settled the claim by paying him $300 in cash. Appellee stated that at the time she signed the broker's employment contract she discussed her pending divorce with Gale and advised him " * * * that I didn't have anything, like the house, free and clear at that time. And he said it would make no difference in this matter with the Record Shop." Appellee was then asked:

"Q. And did you sign this agreement in reliance upon the representation or advice given to you by Mr. Gale?

"A. I did. I thought he was a friend."

Appellee admitted that she discussed the earnest money agreement with Gale in the Model Cafe and signed it at about 4:30 in the afternoon. She stated that before signing she called her attorney's office on the telephone; that her attorney was out of town but that her attorney's brother advised her to go no further with anything until her attorney returned; that Gale had urged her to go to the attorney's office and have her attorney's brother draw up the bulk sales affidavit and start clearing title; that the brother stated he could not handle the matter and that she should wait until her attorney returned.

Gale testified that he was a public accountant and also worked as a licensed real estate salesman; that as a public accountant he had kept books for appellee when she took over the A–1 Record Shop; that appellee had several times asked him to dispose of the business for her and that he had advised her not to do so because it was providing a living for her; that just prior to obtaining the listing she told him that if he didn't try to sell the business, she would get someone else to try to sell it; that he knew of no reason why the business could not be sold; that at the time appellee and her husband separated and dissolved the Northern Vending Company, to his knowledge, certain papers had been filed and recorded in which appellee had been given title to certain property and her husband retained title to certain property; that he knew they were filing for divorce but knew nothing about a pending property settlement; that he knew of no reason why appellee couldn't sell and still knew of no reason why she couldn't sell. Gale testified that he and appellee left her shop and went to the Model Cafe to discuss two earnest money offers that he had from prospective purchasers; that he asked her which one she wanted to sell to; that she asked his advice and was told that one from Elmer Gagnon offered her exactly what she had requested in her listing form and that she signed that agreement while they sat at the cafe table; that they left the cafe and he, Gale, took the earnest money agreement back to appellant's office where he went over the form with appellant; that it was then discovered that appellee had not signed the commission agreement on the form; that he went back to appellee's shop and asked her to sign the commission agreement and she did. Gale also testified that after appellee had decided not to sell that one of the reasons given was the pending divorce action; other reasons given were that she was acting on the

advice of friends, that she objected to taking inventory, that one of the bank notes the buyer would have to assume in the amount of $5,000 had been co-signed by a personal friend of hers and that she objected to discounting the inventory.

In Finding of Fact No. 6 the trial judge found "wrongful conduct" on the part of appellant's agent, Gale, which estopped appellant from asserting any claim for his commission; such conduct consisting of a statement by Gale to appellee that in his opinion she could convey good title to the property, even though he knew at the time the broker's employment contract was signed that appellee was involved in a divorce action with her husband which involved a division of property; that despite this knowledge Gale did not consult with appellee's attorney concerning her right to convey; that Gale was appellee's bookkeeper and friend and had on previous occasions consulted with appellee's attorney concerning her business affairs.

■ The general rule is that if an employed broker procures a purchaser ready, willing and able to buy the property on the terms specified by the seller, the broker is entitled to compensation for his services, even though the sale should fall through because the seller or person employing the broker is unable to convey good title to the property. Exceptions to this rule are situations where the broker knew or should have known of defects in the title. Where the husband employing the broker owned the property in joint tenancy with his wife, it has been held that the broker was entitled to rely on the husband's assumption of authority and recover his commission from the husband, unless he had actual knowledge that the wife was a joint owner and had not obtained a listing from her.[1]

■ In the case before us appellant's agent admittedly knew of the pending divorce action, but testified that he thought they had entered into a property settle-

1. Gray v. Blake, 131 Colo. 560, 283 P.2d 1078 (1955), where the broker's commission was denied because the jury found that he had notice that the wife was the joint owner of the property listed.

ment. On the other hand, he had been her bookkeeper from the time she acquired the record shop and knew that a substantial portion of her original inventory was taken from the Northern Vending and Music Co., which appellee owned as a partner with her husband. He was specifically advised by appellee that she had nothing free and clear, but told her that he thought this made no difference as to the record shop. Because of his relationship with appellee and her reliance on his judgment, Gale had a duty to make further inquiry into the circumstances of appellee's ability to pass a marketable title before offering an off-hand opinion upon which he had every reason to believe she would rely. If he had made such inquiry he would have learned that the pending divorce action between appellee and her husband raised the issue of ownership of the fixtures and the record inventory of the A-1 Record Shop.

■ Appellant contends that the evidence shows that appellee did not rely on Gale's opinion, but actually telephoned her attorney's office for advice before signing the earnest money agreement. Appellee stated that she did telephone her attorney's office; that he was not in but that her attorney's brother advised her not to go any further with the transaction. She nevertheless returned to the cafe table and signed the earnest money agreement in spite of the lay advice she had just received from her attorney's brother. These facts do not support appellant's argument. A more reasonable interpretation of her actions is that she wouldn't have telephoned unless she had been in doubt. Being unable to resolve her doubt with legal advice, she had relied on Gale's assurance. We are not of the opinion that Gale's actions amounted to "wrongful conduct", as the trial court found, but we believe that he was careless in not making some investigation of appellee's ability to deliver a marketable title after she had expressed doubts to him. He had, on prior occasions,

consulted her attorney concerning her business affairs. With the above noted exception to the terminology employed, we hold that Finding No. 6 is amply supported by the evidence.

■■ In Finding No. 7 the court found that plaintiff had failed to produce a purchaser who was ready, willing and able to purchase in accordance with the terms of the earnest money receipt and agreement. This finding has given us some trouble. Both appellee and Gale testified that not one, but two prospective purchasers had signed earnest money agreements. Appellee finally accepted and signed the offer made by Gagnon, which contained terms identical to her original listing. It is the general rule that when a broker has performed to the extent appellant had in this case, he has earned his commission. Here, however, we have the purchaser later insisting that appellee discount the store inventory 10% or that a sale of the inventory be conducted by him on taking possession. How the sale would have afforded purchaser the same relief as the discount is not entirely clear. Gale admitted that appellee had advised him of purchaser's requests or conditions and that appellee had told him that this was one of the reasons she had decided not to go through with the transaction. It was at or about this time that the purchaser traveled to Anchorage and presumably raised the funds necessary to go through with the transaction. It was not established that purchaser, on his return from Anchorage, offered to go through with the transaction on appellee's terms. The settlement agreement between purchaser and appellee was read into the record and it clearly indicates that the parties were still in dispute over the terms and conditions of the sale. It nevertheless required appellee to pay the purchaser the sum of $300 in settlement of all claims under the earnest money contract. The conduct of appellee and purchaser is not fully explained by the record and for that reason seems wholly incon-

sistent. In any event, the broker's employment contract and the earnest money receipt and agreement are not ambiguous. Appellee and purchaser had both signed the earnest money contract. There is no evidence that the dispute over the terms of the earnest money contract arose through any fault of appellant or his agent Gale. It is our view that appellant had fully performed and would be entitled to collect his broker's commission were it not for the fact that he is estopped by the knowledge and conduct of Gale. Finding No. 7 must be set aside for the foregoing reasons.

■ Appellant contends that the trial court erred in admitting into evidence the court file containing the proceedings of the divorce action between appellee and her husband. The divorce action was pending at the time appellant was attempting to perform under his broker's employment contract, but had been tried and a judgment, granting a divorce and dividing the property, including a part of the inventory and fixtures of the record shop, had been entered before the present action was tried.

In support of this contention appellant relies on the case of Diamond v. Chiate[2] which held that conversations between the broker and seller showing that the broker was aware of the fact that seller did not have clear and unencumbered title, contrary to the terms of the listing contract, were within the parol evidence rule and improperly admitted. We do not consider the rule of that case applicable to the facts before us in view of the relationship that existed between appellee and Gale at the time the contracts were entered into.

The case is remanded with directions to amend the findings of fact and conclusions of law to conform with this opinion. Judgment for appellee is affirmed.

AREND, Justice (concurring in part and dissenting in part).

I agree with my brothers that the appellant had fully performed under the broker's employment contract. I must disagree with them when they hold that, notwithstanding full performance on the broker's part, the trial court did not err in denying recovery of the commission agreed upon.

The opinion of my colleagues is, in my view, lamentably vague with respect to the basis for denying recovery. Several close readings of the opinion have failed to inform me as to the essential facts and the doctrines they rely upon. It is for this reason that I decline to take issue with particular contentions, both factual and and legal, as advanced in the opinion.

I am content to rest this dissent upon my conviction that the great weight of the evidence showed clearly that the sale failed of consummation because it was appellee, Mrs. Barber, who refused to go through with it and that it was not the vendees who balked. And the reasons for Mrs. Barber's refusal to sell did not include, in my view of the evidence, that of solicitude towards the vendees. When such is the situation I do not believe any court should allow the employer of a broker to resist successfully an action to recover the broker's commission, notwithstanding the broker was aware that there existed some defect of title which might dissuade a prospective vendee from buying but which did not in fact so dissuade him. In short, I would not allow Mrs. Barber to take advantage of the so-called negligent conduct of Gale when that conduct did not occasion any loss to her.

I would reverse the judgment below and order judgment to be entered for the plaintiff in this action.

2. 81 Ariz. 86, 300 P.2d 583 (1956).