Norman R. PERKINS and LaFaye Perkins,
Appellants,

v.

Glenn A. WILLACY, d/b/a Glenn Willacy
Realty Company, Appellee.

No. 759.

Supreme Court of Alaska.

Aug. 23, 1967.

Warren A. Taylor, Fairbanks, for appellants.

No appearance for appellee.

## OPINION

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

Appellee brought this action to recover a broker's commission of $1,000 for having produced purchasers ready, willing and able to buy real property belonging to the appellants. The trial court entered judgment for appellee and appellants brought this appeal.

The appellants are husband and wife. LaFaye Perkins had signed an Exclusive Listing Agreement granting to appellee the sole and exclusive right to sell appellants' property for $10,000, and promising to pay appellee the sum of $1,000 in the event appellee produced a purchaser ready, willing and able to buy the property. The agreement was not signed by Norman Perkins. The court concluded that Norman

Perkins was bound by the agreement because his wife, LaFaye Perkins, had the apparent authority to act as his agent, or because he was estopped to deny the existence of such agency.

■ The question presented is whether the evidence supports a finding that such an agency relationship existed. Our consideration of that question is limited to determining whether the trial court's finding that LaFaye Perkins was her husband's agent was clearly erroneous. We shall hold that there was clear error only if on the entire evidence we are left with the definite and firm conviction that the court's finding was a mistake.[1]

■ Apparent authority to do an act "is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him."[2] There were no such words or conduct in this case. A salesman for appellee, Kenneth Gain, testified that appellants had expressed an interest in looking at a three-bedroom house that appellee had listed for sale, and that at that time they indicated to Gain that "they were going to buy another house and then sell their own house" — that "they had to get a larger place," that "they weren't exactly sure whether they'd buy a house first and then sell it or if they'd sell the house first and then buy, but they indicated that they had to get a larger place." When Gain was asked whether he had any reason to know that LaFaye Perkins had no authority to list the property for her husband, he answered: "No * * * I assume she did because they both talked about selling it." Later Gain was asked by the court:

Concerning Norman R. Perkins, did he ever discuss the matter with you, the matter of the sale and the terms and the goods that they would be willing to sell?

1. Ogden v. State, 395 P.2d 371 (Alaska 1964).

2. Restatement (Second), Agency § 27 (1958).

Did he, personally, ever discuss that with you?

Gain replied:

No, I never discussed the actual terms with him. He just discussed that he wanted to sell the property and that she—she said that she would call him that morning before she signed the listing and he agreed to the terms and the commission. So I assumed it was okay with him.

■ What Gain testified Norman Perkins said to him is not enough, in our opinion, to have caused appellee to believe that Perkins consented to have the sale of appellants' home done on his behalf by his wife. All that Perkins did so far as appellee was concerned was to express a general interest in selling appellants' house and buying another one. Such interest never reached the point of definiteness so as to lead appellee to believe reasonably that Perkins had made a decision to sell the family home and that appellee was to act as the broker for the sale. Nothing was said by Perkins to appellee as to when the home was to be sold, the price that it was to be sold for, the amount of the broker's commission, or any other arrangements relating to such sale. The words and conduct of Norman Perkins fell short of creating apparent authority in his wife to act on his behalf in selling the home. The trial court was mistaken in finding that such apparent authority existed. Such a finding was clearly erroneous.

■ It is true that Gain testified that when he dealt with LaFaye Perkins for the sale of appellants' property she told him at the time she signed the listing agreement that she had called her husband, who was out of town, and that "he said it was okay to go ahead," and that "he agreed to the terms and the commission." But this would not create, as to appellee, apparent authority for Perkins' wife to act as his agent, because what Perkins purportedly

said was said to his wife and not to appellee. As the Restatement (Second) of Agency points out:

Apparent authority is created by the same method as that which creates authority, except that the *manifestation of the principal is to the third person rather than to the agent*. For apparent authority there is the basic requirement that the principal be responsible for the information which comes to the mind of the third person, similar to the requirement for the creation of authority that the principal be responsible for the information which comes to the agent. [Emphasis added.][3]

■ We also hold that there was clear error in the trial court's finding that an agency by estoppel existed. On this theory Perkins would be bound by his wife's signing of the listing agreement only if it were shown that appellee had changed his position because of his belief that the transaction was entered into by LaFaye Perkins for her husband, and that Perkins had intentionally or carelessly caused such belief or, knowing of such belief and that appellee might change his position because of it, did not take reasonable steps to notify appellee of the facts.[4] No such showing was made. Perkins neither said nor did anything which reasonably would have caused appellee to believe that when LaFaye Perkins signed the listing agreement she was doing so not only for herself but as agent for her husband.

■ Finally, the fact that Norman and LaFaye Perkins are husband and wife is of no particular significance as respects the creation of an agency relationship. "Neither husband nor wife by virtue of the relation has power to act as agent for the other."[5] It may be true that the marital relation is of such a nature that "circumstances which in the case of strangers would not indicate the creation of authority or apparent authority may indicate

3. Id. § 27, comment a (1958).

4. Id. § 8 B.

5. Id. § 22, comment b.

it in the case of husband and wife."[6] Thus, a wife may be found to have authority to transact all of her husband's business affairs where he has habitually permitted the wife to attend to some of his business matters.[7] But that is not the situation here. There is no showing that LaFaye Perkins habitually attended to business matters of her husband, Norman Perkins.

The judgment must be reversed as to appellant, Norman Perkins. However, as to appellant LaFaye Perkins the judgment must be affirmed. It must be borne in mind that LaFaye Perkins entered into an agreement with appellee. What is involved here, in addition to the question as to agency, is the right of appellee to proceed with his agreement on the assumption that LaFaye Perkins would be able to make her title good and procure her husband's joinder when the sale took place. If this assumption was reasonable, then appellee had no duty to approach Norman Perkins for his consent in order to hold LaFaye Perkins liable for appellee's commission.[8] We hold that such an assumption was reasonable because there is nothing in the record which would indicate that appellee knew or should have known that Norman Perkins would not join in the sale, and LaFaye Perkins by her representations to appellee made it reasonable for the latter to assume that she had obtained or would obtain her husband's joinder in the sale.

As to appellant Norman Perkins, the judgment is reversed and the case remanded to the Superior Court with directions to set aside the judgment and to enter judgment for appellant Norman Perkins. As to appellant LaFaye Perkins, the judgment is affirmed.

NESBETT, Chief Justice (dissenting).

I must dissent. Numerous authorities hold that a husband is liable on a contract with a real estate broker for the sale of property jointly owned, even though he is later unable to persuade his wife to join in the sale. It might seem quite logical on first thought to apply the rule in reverse, as the majority has done in this case, and hold the wife liable on her contract with the real estate broker when it develops that she is unable to persuade her husband to join in the sale.

However, I am reluctant to join in a reverse application of the rule for several reasons. The husband was generally recognized at common law as being the manager of the family property.[1] He is presumed to be capable of safeguarding the family interests. Therefore, it does not greatly disturb one's sense of justice to hold him liable to the broker on his contract to sell jointly owned property even though he is later unable to persuade his wife to sign the conveyance. The underlying problem in this type of case was touched upon cursorily in Campbell v. Arthur H. Campbell & Co.[2] where the court said:

Such right of the broker against the husband cannot be defeated by the refusal of the wife to join in a conveyance. We think that in the great majority of cases the husband attends to the business for the family, and we think the broker has a right to rely on the husband's assumption of authority and his implied repre-

6. Id.

7. Id.

8. In Roy v. Huard, 157 Me. 477, 174 A.2d 41, 43 (1961), the Court said:
   What is really involved is the right of the broker to proceed with his contract on the assumption that the principal will be able to make his title good and procure his wife's joinder when the sale occurs. If this assumption is reasona-

ble, the broker has no duty to approach the wife for her consent.

See also Reynolds v. Ashabranner, 212 Ark. 718, 207 S.W.2d 304, 306 (1948).

1. In some states, particularly community property states, the husband is recognized by statute as being the manager of the family property. See Cal.Civ.Code §§ 161a, 172 and 172a.

2. 155 Tenn. 515, 296 S.W. 9 (1927).

sentation that the wife will join in the necessary title papers.

On the other hand, the wife has not generally been recognized in law as being the manager of the family property. Generally her duties are in the household and with the children, and considerably removed from the affairs of the business world. For this reason she is ordinarily not as well suited to negotiate a contract with a real estate broker as the husband. Such contracts involve the negotiation and establishment of at least three important items, namely: the sales price of the property, the amount of commission the broker is to receive and the term of the listing.

Here the contract called for a broker's commission of 10 percent on a sales price of $10,000. The sales price established was such that a purchaser was obtained within four days. When the husband came home from his distant employment it was to learn that the family home had been sold by his wife on terms with which he could not agree.

The fact that only the wife is being held liable on the broker's contract does not establish consistency and fairness in the application of the rule. The obligation and burden of paying the broker's commission must be borne by the husband as well as the wife.

Instances where the wife has been held liable on a real estate broker's contract where the husband refused to join in the sale are rare. The Alaska decision of Pasley v. Barber[3] is cited in an annotation in 10 A.L.R.3rd 665, 674 as authority for holding the wife liable in such instances. *Pasley* held that the real estate broker, who was also the wife's business advisor, knew or should have known that the property

owned jointly by her with her husband was involved in divorce proceedings and that very likely she would be unable to procure his cooperation in executing the deed. It is significant that this court stated in *Pasley*:[4]

> Where the husband employing the broker owned the property in joint tenancy with his wife, it has been held that the broker was entitled to rely on the husband's assumption of authority and recover his commission from the husband, *unless he had actual knowledge that the wife was a joint owner and had not obtained a listing from her.* (Emphasis supplied.)[5]

The only authority cited in the 10 A.L.R. 3rd annotation which is available for study is Portis v. Thrash.[6] This decision holds the wife liable on the real estate broker's contract where the husband refused to join in the sale. The decision relies for authority on the previous Arkansas decision of Reynolds v. Ashabranner[7] where the husband was held liable on his contract with the real estate broker when the wife refused to join. The propriety of applying the rule to the wife was not discussed in Portis.[8]

The rule that the wife should be held liable to the broker in these situations is not supported by numerical authority. In my opinion Pasley v. Barber is authority for the proposition that if the broker had actual knowledge that the husband was a joint owner and had not obtained a listing from him, the broker's contract could not be enforced against either owner.

There is an additional reason why I am reluctant to join in the majority decision. AS 08.88.341 states in part:

> All real estate listings must be in writing and must be signed by the seller or by an agent of the seller.

3. 368 P.2d 549 (1962).

4. 368 P.2d 549, 551.

5. Gray v. Blake, 131 Colo. 560, 283 P.2d 1078 (1955) was cited as authority for this statement.

6. 216 Ark. 946, 229 S.W.2d 127 (1950).

7. 212 Ark. 718, 207 S.W.2d 304 (1948).

8. In Pepper v. Chatel, 185 A.2d 508 (D. C.Mun.App.1962) the wife was held liable, but the facts are distinguishable. She had entered into the contract with the broker in her maiden name for the sale of property which she had inherited. The broker did not know that she was married until some time after the contract had been entered into.

Although it has not been urged by appellant, it appears likely that the legislature intended that the word "seller" include both the husband and the wife where they were joint owners. Since we have held that the wife was not the husband's agent in this case, it would follow that the broker's contract would not be enforceable against either spouse if the above interpretation is correct. This result would be consistent with a similar holding based on *Pasley*, since it is undisputed that the broker in this case was fully aware of the fact that the husband and wife were joint owners.

In my opinion, neither of the appellants should be held liable on the real estate broker's contract involved herein.