Robert SOWASH, Appellant,

v.

Billie GARRETT, d/b/a Muldoon Realty and Evan G. Tobler, Appellees.

Perry GREEN, Appellant,

v.

Billie GARRETT, d/b/a Muldoon Realty and Evan Tobler, Appellees.

Nos. 4337, 4417.

Supreme Court of Alaska.

June 26, 1981.

doon Realty salesman, in Garrett's and Tobler's action for specific performance of an alleged contract to sell real property and recovery of their commission on the sale. We reverse.

Green and Sowash own a parcel of real property as tenants in common. They acquired the property in 1971 under the terms of a document entitled: "Real Property— Joint Purchaser Buy/Sell Agreement." The buy/sell agreement provides for the payment of expenses on the property, including mortgage payments, taxes and assessments, and for certain options and conditions under which, in the event of a default, the non-defaulting party may sell the property.

Paragraph 4 of the buy/sell agreement provides that, if one of the parties defaults in the payment of his obligations under the agreement, the other party shall be permitted to pay the same and give written notice to the defaulting party requesting reimbursement. With respect to the notice of default, paragraph 4 provides:

> Said written notice shall be given by registered or certified mail, properly addressed to the defaulting party, with required postage affixed, and the defaulting party shall have thirty (30) days from the date of mailing such request within which to reimburse the party requesting reimbursement.

Subparagraph 4(b) essentially states that, upon failure of the defaulting party to reimburse the other, within thirty days after proper notice, the non-defaulting party shall have the "right to arrange for the sale of the property" in the manner described in paragraph 5:

> [T]he non-defaulting party may elect to sell the property covered by this agreement ... by mailing to such party, by registered or certified mail, "Notice of Election to Sell" the property. After mailing the notice of such election to sell, the nondefaulting party may list the property for sale with any licensed real estate broker ....

James L. Johnston, Opland, Johnston & Boedeker, Anchorage, for appellant Sowash.

John Anthony Smith, Smith & Gruening, Anchorage, for appellant Green.

M. Ashley Dickerson, Anchorage, for appellees.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and HANSON, Superior Court Judge.*

BURKE, Justice.

Robert Sowash and Perry Green appeal from the superior court's grant of summary judgment in favor of Billie D. Garrett, a real estate broker doing business as Muldoon Realty, and Evan G. Tobler, a Mul-

---

* Hanson, Judge, sitting by assignment made pursuant to article IV, section 16, Constitution of Alaska.

In 1976, Sowash was allegedly unable to meet his obligations under the buy/sell agreement. Property taxes levied by the Municipality of Anchorage were delinquent and over $40,000.00 was owed to certain individuals holding first and second deeds of trust on the property, prompting those individuals to begin foreclosure proceedings.

These and other problems caused Green to list the property for sale with Walter J. Ward, a licensed real estate broker. Before and after he listed the property, Green wrote to Sowash a number of times, expressing concern over Sowash's default and stating his own desire and intention that the property be sold. Green, however, failed to comply with the formal notice requirements of the buy/sell agreement.

Ward advertised the listing that he had acquired with Multiple Listing Service, Inc., causing it to come to the attention of the plaintiffs below, Garrett and Tobler. Garrett and Tobler subsequently located two prospective purchasers, Troy Hankins and Marlin W. Law, who, on April 9, 1977, made an offer to purchase the property. The offer was presented to Green, by Garrett and Tobler, in the form of an earnest money agreement signed by the prospective purchasers. Green signed the earnest money agreement, thereby accepting the offer, on April 10, 1977. According to the terms of the agreement, Green promised to pay a 10% commission to the real estate brokers involved in the sale.[1]

Green was subsequently unable to deliver title to the property, partly because of Sowash's refusal to execute the necessary documents. Sowash claimed that he never authorized Green to list or sell the property on the terms contained in the earnest money agreement.

On June 17, 1977, Garrett and Tobler began an action in the superior court against Sowash and Green. Count One of their complaint sought specific performance of the agreement to sell to Hankins and Law, urging the court to compel Sowash and Green "to perform said contract by accepting . . . the required down payment on said property and executing the necessary conveyances as well as accepting the necessary conveyances to complete said sale." Count Two, set forth and described in the complaint as a "separate cause of action," was a claim for $38,750.00, the amount claimed to be due and owing to the plaintiffs as their share of the agreed broker's commission.

The superior court granted summary judgment in favor of Garrett and Tobler on each count. This appeal followed.

## A. *Specific Performance*

■ The critical issue on the question of Garrett and Tobler's right to specific performance is whether Green's acceptance of the buyers' offer bound his co-tenant, Sowash. It is clear that Green agreed to sell the property to Hankins and Law on the terms contained in the earnest money agreement. Sowash, however, was bound by that agreement only if (1) Green acted as Sowash's agent or (2) Green was authorized to sell Sowash's interest, along with his own, under the terms of their buy/sell agreement.

The superior court, after concluding that there were "no genuine issues of fact in dispute," resolved this issue in favor of the plaintiffs, stating:

> It is undisputed that the formal notice requirements [of the Buy/Sell Agreement] were not observed; however, the defaulting party, Mr. Sowash, was on notice of his default and waived the formal notice requirement and ratified and adopted the actions of Mr. Green as evidenced by an exchange of correspondence among Messrs. Green, Sowash and Ward . . . .[2]

1. The original listing agreement between Green and Ward is not part of the record on appeal. It appears clear, however, that that agreement called for a 10% broker's commission.

2. It is not clear whether the court's ruling was based entirely on what it believed to be Green's authority under the buy/sell agreement, or whether the court also applied principles of agency. In either event, for the reasons hereinafter stated, we believe the court erred in granting summary judgment to the plaintiffs.

■ Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that [the prevailing] party is entitled to a judgment as a matter of law." Rule 56(c), Alaska R.Civ.P. Moreover, the trial court is required to draw all reasonable inferences in favor of the non-moving party and against the movant. *Clabaugh v. Bottcher*, 545 P.2d 172, 175 n.5 (Alaska 1976). In the case at bar, it appears that these principles were not observed.

■ The "exchange of correspondence" referred to by the superior court consists largely of copies of a number of letters that Green sent to Sowash. The only letter which appears to have been written by Sowash is one that he wrote to Green, on an unspecified date, stating partly: "Please let me know what is going on, and how soon do you think it will be able to close?? [*sic*] Any Problems? I would like the realtor to send me a copy of the offer." In another writing, described in an affidavit by Sowash as "my notes of a night letter sent to PERRY GREEN on March 28, 1977," Sowash stated: "Received your shocking letter. (stop) How much will you sell for? (stop) What is decent? (stop) Letter to follow. (stop) Don't accept anything unless offered to me first. (stop) . . . Write reply soon." In Sowash's affidavit itself, filed August 8, 1978, prior to the hearing on the motion for summary judgment, Sowash stated:

8. That in or about December of 1976, I had a conversation with PERRY GREEN wherein he stated he had a real estate broker who had a buyer for 1.2 million dollars and wanted a listing. I strongly opposed listing the real estate with a real estate broker, but did indicate that if he had a buyer he should submit the offer. If the offer was acceptable and met the obligations I had to COAST MORTGAGE and to others, I would, in all likelihood[,] agree to a sale . . . .

9. Under the provisions of the buy/sell agreement, neither myself or MR. GREEN were in a position to sell our interest in the property to any other person without first offering it to the other party. I, for some time, had information indicating PERRY GREEN had sold some interest in the property to a person by the name of GENE FOWLER. Said sale, if it in fact took place, was in violation of this agreement and on occasion I suggested to GREEN that any such sale, if it did exist, would be ineffective.

. . . .

14. According to my best estimates, I have met my obligations relative to the payment of taxes on the subject property.

. . . .

17. Based upon the above estimate [of the amounts contributed by each of the parties] I had met or exceeded my obligations relative to the principal and interest payments on the mortgages. Because of the vagueness of our accounts, I have repeatedly asked him for his record of payments so we could get straight with each other. He has never given me an accounting.

. . . .

21. I, [*sic*] never signed a document of sale, nor did I ever authorize PERRY GREEN to act as my agent to sign the document for the sale of this real estate or any other real estate.

In light of the foregoing, we believe that there were genuine issues of material fact concerning: (1) whether Green acted as Sowash's agent, thereby obligating Sowash, as well as himself, to perform according to the terms contained in the earnest money agreement; (2) whether, absent such authority, Green was entitled to exercise his right to sell the property under the terms of the buy/sell agreement, and, if so, (3) whether Sowash waived the formal notice requirements of that agreement and ratified Green's actions.

Thus, we believe that the superior court erred in ordering specific performance

against Green and Sowash and reverse that portion of the court's judgment.[3]

### B. *Broker's Commission*

With regard to Garrett and Tobler's claim that they are entitled to a broker's commission, the superior court concluded:

> The plaintiffs are the selling real estate broker and salesman and are entitled to receive a commission and to enforce the listing agreement having found a buyer ready, willing, and able to purchase pursuant to the terms of the listing. *Pasley v. Barber*, 368 P.2d 549, 551 (Alaska 1962).

■ There appears to be no genuine dispute as to whether Hankins and Law were ready, willing and able to proceed with the sale. We believe, however, that there was a genuine issue of fact concerning whether, in agreeing to sell the property, Green acted as Sowash's agent, thereby binding Sowash to pay the commission called for by the agreement signed by Green. Thus, we conclude that the superior court further erred in granting summary judgment against Sowash on Count Two of the complaint.

■ Green, of course, signed the listing agreement. Therefore, under the general rule, Green became liable for the agreed commission once a willing buyer was located, whether or not the sale was ever actually completed:

> The general rule is that if an employed broker procures a purchaser ready, willing and able to buy the property on the terms specified by the seller, the broker is entitled to compensation for his services, even though the sale should fall through

because the seller or person employing the broker is unable to convey good title to the property.

*Pasley v. Barber*, 368 P.2d at 551. Green and Sowash, however, claim that the general rule is inapplicable in the case at bar.

In *Pasley v. Barber* we stated: "Exceptions to this [general] rule are situations where the broker knew or should have known of defects in the title." *Id.* at 551. Thus, in *Pasley* we held that a real estate was not entitled to a commission where the broker's agent knew or should have known that the party listing the property could not convey clear title because the property was involved in a pending divorce action.

■ We believe that the record in the case at bar, particularly the affidavit of Walter J. Ward, who obtained the original listing, discloses a genuine issue of fact concerning whether Garrett and Tobler knew or should have known that Green was unable to convey clear title. Thus, we agree with appellants' argument that the court erred in granting summary judgment against Green as well as Sowash.

REVERSED and REMANDED for trial.

COMPTON, J., not participating.

**3.** Garrett and Tobler brought suit in their own names; the alleged purchasers, Hankins and Law, were not parties to the action in the court below and have not been made parties to this appeal. Thus, to the extent that the action is one to compel specific performance on the part of the alleged sellers, Sowash and Green, it has never been "prosecuted in the name of the real party in interest," as required by Rule 17(a), Alaska R.Civ.P. The real parties in interest, Hankins and Law, did, however, ratify the action. In a joint affidavit filed with the superior court on August 24, 1978, Hankins and Law stated that they believed that the action was brought for their benefit as well as the named plaintiffs and that "if there is any technical reason we are not in it, we would like it corrected." Thus, we believe, the action should not be dismissed. Instead, upon remand, Hankins and Law should be made parties. We agree with appellants' argument that, as the real parties in interest, Hankins and Law are indispensable parties to any action for specific performance of the alleged contract, since "in [their] absence complete relief cannot be accorded among those already parties." Rule 19(a), Alaska R.Civ.P.